451 P.2d 1002

Barton GHAHATE and Evangeline Ghahate, Appellants,

v.

BUREAU OF REVENUE, State of New Mexico and F. A. Vigil, Commissioner of Revenue, Appellees.

No. 253.

Court of Appeals of New Mexico.

Feb. 21, 1969.

Louis G. Stewart, Jr., Zuni, Zuni Legal Aid and Defender Society, for appellants.

Boston E. Witt, Atty. Gen., Gary O'Dowd, Asst. Atty. Gen., Santa Fe, for appellees.

OPINION

WOOD, Judge.

Barton Ghahate is an enrolled member of the Zuni Indian tribe. His wife, Evangeline R. Ghahate, is an enrolled member of the Navajo Indian tribe. They sought a refund of New Mexico income tax paid for 1967. The Commissioner (Commissioner of Revenue) denied the claim. The Ghahates invoked our jurisdiction by appeal-

ing directly to this court. Section 72– 13–39, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1967); see Paiz v. Hughes, 76 N.M. 562, 417 P.2d 51 (1966). They assert the Commissioner's order is not in accordance with law. They contend that New Mexico does not have authority to tax income earned on an Indian reservation by reservation Indians. They base this contention on both federal and state law.

The factual basis for this contention is not disputed. Mr. and Mrs. Ghahate lived on an Indian reservation—Zuni. He was employed as an investigator and as an interpreter for the Zuni Legal Aid and Defender Society; she as a secretary at a public elementary school. Both performed the services of their employment within the reservation. All of their 1967 income was derived from employment on the reservation.

The Ghahates assert that New Mexico may not tax their income because of the combination of these two factors—they are Indians living on a reservation; their income was earned on the reservation. They do not contend that the source of the funds, from which the income was derived, deprives New Mexico of authority to tax their income.

*Federal law.*

■ Worcester v. Georgia, 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832) is authority for the policy that an Indian reservation is a distinct nation and that state law may not be applied within the boundaries of the reservation. Under this policy, states do not have general authority to regulate the affairs of Indians on a reservation. As stated in Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959):

"* * * Significantly, when Congress has wished the States to exercise this power it has expressly granted them the jurisdiction which Worcester v. Georgia had denied."

*Williams* held that Arizona did not have jurisdiction over a civil suit brought by a non-Indian against an Indian to collect the price of goods sold to the Indian on the Navajo reservation. *Williams* held that jurisdiction was lacking because:

"* * * * to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves. * * *"

This policy of excluding state law has been modified where essential tribal relations are not involved and where Indian rights are not jeopardized. *Williams* states:

"* * * Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them. * * *"

It is not contended that an Act of Congress authorizes New Mexico to apply its income tax to reservation Indians. Organized Village of Kake v. Egan, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962) states:

"Decisions of this Court are few as to the power of the States when not granted Congressional authority to regulate matters affecting Indians. * * *"

The few decisions are reviewed; the opinion then states:

"These decisions indicate that even on reservations state laws may be applied to Indians unless such application would interfere with reservation self-government or impair a right granted or reserved by federal law. * * *"

The fact that the law sought to be applied in this case is New Mexico's income tax law does not change this approach to the question of New Mexico's authority. Concerning the federal income tax law, Squire v. Capoeman, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956) states:

"We agree with the Government that Indians are citizens and that in ordinary affairs of life, not governed by treaties or remedial legislation, they are subject to the payment of income taxes as

are other citizens. We also agree that, to be valid, exemptions to tax laws should be clearly expressed. But we cannot agree that taxability of respondents in these circumstances is unaffected by treaty, the trust patent or the Allotment Act."

See C. I. R. v. Walker, 326 F.2d 261 (9th Cir. 1964).

It is stipulated that Mr. and Mrs. Ghahate are citizens of New Mexico. Compare Montoya v. Bolack, 70 N.M. 196, 372 P.2d 387 (1962).

The income tax was paid—(1) by withholding from earnings pursuant to our Withholding Tax Act (§§ 72–15–49 to 72–15–66, N.M.S.A.1953 (Repl.Vol. 10, pt. 2)) and (2) by direct payment under our Income Tax Act (§§ 72–15A–1 to 72–15A–15, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp. 1967)). No claim is made that these Acts, by their terms, exempt Indians.

Under Organized Village of Kake v. Egan, supra, New Mexico's income tax law may be applied to reservation Indians unless " * * * such application would interfere with reservation self-government or impair a right granted or reserved by federal law. * * *"

Here there is no interference with reservation self-government. It is stipulated that the tax involved is a tax on individual income. It is neither an ad valorem nor " * * * any other kind of a property tax, * * *". No tax is assessed against tribal lands. It is also stipulated:

"The Zuni Indian Tribe itself is not inconvenienced, nor is it interfered with in any way, because of the fact Barton Ghahate and Evangeline R. Ghahate have been required to pay the individual income tax in question to the State of New Mexico."

The Ghahates claim that the application of the tax impairs a right granted by federal law. They rely on the Wheeler-Howard Act, 48 Stat. 987, ch. 576, §§ 16, 17; 25 U.S.C. §§ 476, 477 (1964). This Act provides for self-government of Indian tribes. The stipulated facts show that the tax does not interfere with reservation self-government. Your Food Stores, Inc. (NSL) v. Village of Espanola, 68 N.M. 327, 361 P.2d 950 (1961) does contain language indicating that this Act may bar the operation of state law over Indians. This language, however, must be considered in the light of the limited issue involved in that case. The issue was whether a municipality could annex Pueblo land. See Montoya v. Bolack, supra. The Your Food Stores decision is not in point on the issue of whether New Mexico's income tax law may be applied to reservation Indians.

It is also claimed that application of the tax impairs a right reserved by federal law. Three arguments are presented under this contention.

The first is that the tax may not be applied because of the Constitution of the United States, Art. 1, § 8. This section authorizes the Congress to regulate commerce with the Indian tribes. There is nothing in the record indicating that "commerce" is in any way involved in this case.

The second argument is based on 67 Stat. 588, ch. 505, § 7 [also to be found in a footnote to 28 U.S.C. § 1360 (1964)]. By this Act Congress generally expressed its willingness to have any state assume jurisdiction over reservation Indians provided either the Legislature or the people of the state affirmatively accept such a responsibility. New Mexico has not accepted this offer of jurisdiction. See Montoya v. Bolack, supra. The fact that New Mexico has not assumed jurisdiction over reservation Indians does not, however, indicate any withdrawal or loss of the jurisdiction recognized in Organized Village of Kake v. Egan, supra, and Williams v. Lee, supra.

The third argument is based on Warren Trading Post Co. v. Arizona State Tax Comm., 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965). This decision held that Arizona could not impose its tax on the gross proceeds of sales of an Indian

trader to reservation Indians when those sales occurred on the Indian reservation. Application of the tax was prohibited because it was inconsistent with comprehensive federal regulations of Indian traders. The opinion refers to various regulations and states:

"* * * These apparently all-inclusive regulations and the statutes authorizing them would seem in themselves sufficient to show that Congress has taken the business of Indian trading on reservations so fully in hand that no room remains for state laws imposing additional burdens upon traders. * * *"

New Mexico followed the *Warren* decision in considering the applicability of its Emergency School Tax Act to traders on the Indian reservation. See the unreported opinion of Paul E. Brink, d/b/a Brink Trading Company v. Bureau of Revenue, State of New Mexico, Supreme Court No. 7670, order entered July 13, 1965.

The *Warren* decision does not support the contentions of the Ghahates. Here we have no comprehensive federal legislation on which to base the claim that the state's authority to tax Indian income has been withdrawn by federal law.

Since applicability of New Mexico's income tax does not interfere with reservation self-government, and does not impair a right granted or reserved under federal law, federal authority does not bar application of the tax.

*State law.*

The Constitution of New Mexico, Art. XXI, § 2, is relied on as prohibiting New Mexico from taxing the income of an Indian who lives on a reservation and who derives the income from employment on the reservation. This constitutional provision is almost identical to the Enabling Act for New Mexico, § 2, para. Second (Act of June 20, 1910; 36 Stat. 557, ch. 310). See Montoya v. Bolack, supra.

Both the constitutional provision and the Enabling Act provision concern a disclaimer on the part of New Mexico. The disclaimer pertains to Indian lands. The New Mexico Supreme Court has held that this is a disclaimer of a proprietary rather than a governmental interest. Paiz v. Hughes, supra; Batchelor v. Charley, 74 N.M. 717, 398 P.2d 49 (1965); State v. Warner, 71 N.M. 418, 379 P.2d 66 (1963); Montoya v. Bolack, supra. See Organized Village of Kake v. Egan, supra. The Ghahates concede that, in a broad sense, imposition of a tax is the exercise of a governmental function. However, they assert that under the facts of this case imposition of the tax is a proprietary function.

We do not decide whether the tax imposed by New Mexico is, in this case, the exercise of a governmental or proprietary function.[1] Such a decision is unnecessary.

The disclaimer is a disclaimer of all right, title and interest to Indian lands until the title of the Indian tribes has been extinguished. The disclaimer provision is not applicable where there is no issue concerning Indian lands. The parties stipulated: "Neither title, right of possession, nor control of any of the tribal lands * * * are drawn into question by reason of the New Mexico income tax paid. * * *" by the Ghahates. The disclaimer does not prevent New Mexico from taxing the Indian income here involved.

1. New Mexico decisions concerning the tort liability of a municipality or County have discussed the difference between governmental and proprietary functions. Andrade v. City of Albuquerque, 74 N.M. 534, 395 P.2d 597 (1964); Murphy v. City of Carlsbad, 66 N.M. 376, 348 P.2d 492 (1960); Elliott v. Lea County, 58 N.M. 147, 267 P.2d 131 (1954); Barker v. City of Santa Fe, 47 N.M. 85, 136 P.2d 480 (1943). A municipality acts in a governmental capacity when it levies paving assessments. Altman v. Kilburn, 45 N.M. 453, 116 P.2d 812, 136, A.L.R. 554 (1941). Generally, the imposition of a tax is the exercise of a governmental function. See West, Pacific Digest 2nd, Taxation, § 2, and cases therein cited.

Your Food Stores, Inc. (NSL) v. Village of Espanola, supra, contains the following statement:

"* * * It is clear that that State of New Mexico has no power to legislate for the Pueblo nor to make its people subject to state laws, * * *."

Taken out of context, this statement appears to support the claim that New Mexico may not impose the income tax here involved. The statement must be considered in relation to the limited issue involved in that case—the attempted annexation of Pueblo land. The statement cannot be taken as a decision that New Mexico may not tax the income of reservation Indians.

The Commissioner's order denying the tax refund was in accordance with law and is affirmed.

It is so ordered.

OMAN and HENDLEY, JJ., concur.