Melvin WHITE EAGLE, Plaintiff
and Respondent,

v.

Byron L. DORGAN, Tax Commissioner, State
of North Dakota, Defendant and
Appellant,

and

R. B. Luger, doing business as the Diamond
Z Food Center; and Dean Barker, doing
business as Barker's Indian Trading Post,
Defendants.

Joseph F. CONDON, Plaintiff and
Respondent,

v.

Byron L. DORGAN, Tax Commissioner,
State of North Dakota, Defendant
and Appellant.

Henry BAILEY, Plaintiff and Respondent,

v.

Byron L. DORGAN, Tax Commissioner,
State of North Dakota, Defendant
and Appellant.

Harry FAST HORSE, Plaintiff and
Respondent,

v.

Byron L. DORGAN, Tax Commissioner,
State of North Dakota, Defendant
and Appellant,

and

Lloyd L. Martinson, doing business as the
Martinson Store, Defendant.
Civil Nos. 8855–8858.

Supreme Court of North Dakota.

July 12, 1973.

Albert A. Wolf, Bismarck, and Marvin J. Sonosky, Washington, D. C., for plaintiffs and respondents.

Paul M. Sand, First Asst. Atty. Gen., and Kenneth M. Jakes, Albert R. Hausauer, and Robert W. Wirtz, Special Asst. Attys. Gen., Bismarck, for defendant and appellant Tax Commissioner.

STRUTZ, Chief Justice.

Each of the plaintiffs in the above four actions is an Indian residing on the Standing Rock Indian Reservation in North Dakota. Three are members of the Standing Rock Sioux Tribe, and the fourth is a member of the Sheyenne River Sioux Tribe. All of them earn their livelihood on the reservation, the plaintiff White Eagle as an employee of the Standing Rock Sioux tribal office in Fort Yates; the plaintiff Condon as an employee of the United States Bureau of Indian Affairs; the plaintiff Bailey as the owner and operator of a service station on the reservation; and the plaintiff Fast Horse, who has lived on the reservation for many years, has purchased food and other items from retail outlets on the reservation and has been compelled to pay sales tax on the purchases so made.

Three non-Indian owners of retail stores located on the reservation were joined as defendants in the actions in the district court. At the time the actions were commenced, one of such owners was licensed as an Indian trader under the provisions of Title 25, U.S.C.A. Section 261. The other two stores were licensed as Indian traders after the commencement of suit and before the trial of these actions.

The plaintiffs White Eagle and Fast Horse were required to pay North Dakota sales tax on purchases of food and other items from such retailers. White Eagle, in addition, was required to pay income tax on his income as an employee of the tribe, which income was earned exclusively on the reservation. The appellant Dorgan, as State Tax Commissioner, demanded that the plaintiff Condon pay state income tax on his income as employee of the United States Bureau of Indian Affairs, which income was earned exclusively on the reservation. The Tax Commissioner asserts that the plaintiff Bailey, who owns and operates a service station on the reservation, must pay state income tax on his income and sales tax on the gross receipts of his business, and that he must pay a business-privilege tax for doing business in the State of North Dakota, although such business is conducted exclusively on the reservation.

These four actions were commenced to test the power of the State of North Dakota to impose taxes on and collect taxes from Indians on the reservation. The facts, as briefly outlined above, were stipulated by the parties. The trial court, after hearing, held for the plaintiff in each of the actions, and appeal by the State Tax Commissioner to this court followed.

The sole issue for this court to determine on these appeals is whether the State has the power to collect taxes from an In-

dian residing on an Indian reservation, where the income is earned and the business is conducted entirely on the reservation.

█ The problems presented by the appeals in these four cases are problems which have plagued the courts for many years. Indians born in the United States and subject to its jurisdiction are citizens of the United States and of the State in which they reside. As such citizens, they have constitutional rights, privileges, and immunities, but they also have corresponding legal duties and obligations. However, the many and varied treaties which have been entered into with different Indian tribes by the Federal Government, the many laws enacted by the Congress on the subject of Indian rights and obligations, and the many Federal court decisions interpreting such treaties and laws make it very difficult to define an Indian's rights and obligations. As a general rule, however, Indians while living on Indian reservations are not subject to the laws of the State in which they reside.

It has been stipulated that each of the plaintiffs in these actions is an Indian and that he resides on an Indian reservation. Thus the fact that an Indian may terminate his tribal relationship, and may cease to be an Indian for all legal purposes whenever he determines to do so, is immaterial so far as these actions are concerned.

█ It now is well settled that the State has no power over the conduct of Indians in Indian country. Gourneau v. Smith, 207 N.W.2d 256 (N.D.1973); In re Whiteshield, 124 N.W.2d 694 (N.D.1963). Although methods by which Indians may accept jurisdiction of State courts have been provided by Federal and State law, such jurisdiction has not, in fact, been accepted by Indians on any North Dakota reservation. Until Indians do so act, the State has no jurisdiction over any civil cause arising on an Indian reservation in this State. Public Law 90–284, Sec. 402;

Chap. 27–19, N.D.C.C.; In re Whiteshield, *supra*.

We now face the question of whether the State may levy and collect taxes from an Indian residing on an Indian reservation under the conditions set forth above. The recent decision of the United States Supreme Court in McClanahan v. State Tax Commission of Arizona, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), would seem to settle the issue of payment of income tax by White Eagle and Condon on income which they earn on the reservation. In *McClanahan,* the United States Supreme Court held that the State of Arizona may not assume jurisdiction to impose state income tax upon individual Navajo Indians residing on the Navajo Reservation, in the absence of an agreement by the tribe submitting to such jurisdiction.

█ We believe the same would be true in this State, and that in the absence of an agreement by the Indians residing on the Standing Rock Sioux Reservation accepting jurisdiction of the State of North Dakota to impose income tax upon individual members of the tribe, this State has no jurisdiction to impose such tax.

█ The issue of the validity of a levy by a State of a sales tax or business-privilege tax upon a seller doing retail trading business with Indians on a reservation has previously been determined by the United States Supreme Court in the case of Warren Trading Post Co. v. Arizona State Tax Commission, 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965). In that case, the validity of a tax on the gross sales of a company doing retail business with Indians was considered by the Supreme Court. Arizona sales tax was levied on the gross sales of an Indian trader doing business on the Arizona part of the Navajo Indian Reservation. We believe that the decision in *Warren Trading Post Co.* applies to our situation and makes it illegal to collect a tax on sales made by a licensed Indian trader to Indians living on a reservation. The Supreme Court held in that case that

the Congress, in the exercise of its power granted by Article I, Section 8, of the United States Constitution, which gives to the Congress the power to regulate commerce with foreign nations and among the several States, "and with the Indian Tribes," has undertaken to regulate trading on the reservation in so complete and comprehensive a manner that there is no room for States to legislate on that subject. The Court stated:

"We think the assessment and collection of this tax would to a substantial extent frustrate the evident congressional purpose of ensuring that no burden shall be imposed upon Indian traders for trading with Indians on reservations except as authorized by Acts of Congress or by valid regulations promulgated under those Acts. This state tax on gross income would put financial burdens on appellant or the Indians with whom it deals in addition to those Congress or the tribes have prescribed, and could thereby disturb and disarrange the statutory plan Congress set up in order to protect Indians against prices deemed unfair or unreasonable by the Indian Commissioner. *And since federal legislation has left the State with no duties or responsibilities respecting the reservation Indians, we cannot believe that Congress intended to leave to the State the privilege of levying this tax.* Insofar as they are applied to this federally licensed Indian trader with respect to sales made to reservation Indians on the reservation, these state laws imposing taxes cannot stand." [Emphasis supplied.]

We believe this ruling is so sweeping that it cannot be successfully argued that the attempt by the State to impose its taxes in these cases can in any way be sustained.

For reasons stated in this opinion, the judgment of the district court in each of these cases must be affirmed.

PER CURIAM.

The foregoing opinion was prepared by the Honorable ALVIN C. STRUTZ, Chief Justice, before his death. It is adopted by the undersigned as the opinion of this court.

ERICKSTAD, C. J., and TEIGEN, PAULSON and KNUDSON, JJ., concur.

VOGEL, J., not being a member of this court at the time of submission of this case, did not participate.