531 P.2d 1234

**Mary Jo FOX, Appellant,**

v.

**BUREAU OF REVENUE of the State of New Mexico, Appellee.**

**No. 1514.**

Court of Appeals of New Mexico.

Jan. 15, 1975.

Rehearing Denied Jan. 24, 1975.

Certiorari Granted Feb. 20, 1975.

Paul L. Biderman, Albuquerque, Richard B. Collins, Window Rock, Ariz., for appellant.

David L. Norvell, Atty. Gen., Jan E. Unna, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

HENDLEY, Judge.

Taxpayer is a member of the Commanche Tribe of Indians of Oklahoma and is not an enrolled member of the Navajo Tribe. At all times material hereto, she resided on and worked only on the Navajo Reservation in New Mexico. All income received by taxpayer for the years 1969 through 1972 was a result of employment on the Navajo Reservation in New Mexico. Taxpayer's husband is a non-Indian and it is conceded that his income is taxable. Taxpayer filed a claim for refund of state income tax withheld for the years 1969 through 1972. The Bureau denied the claim for refund and taxpayer appeals. We reverse.

The sole question on this appeal, under the above facts, is whether the taxpayer is exempt from state income tax. A comparison of the facts in the instant case and of those in McClanahan v. State Tax Commission of Arizona, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973) reveals that

the only significant difference is that McClanahan was a Navajo Indian working on the Navajo Reservation in Arizona, and taxpayer here is a Commanche Indian working on the Navajo Reservation in New Mexico. The common facts of both cases, however, is the coalescence of status (Indian) and situs (Reservation). *McClanahan* stated:

"* * * that by imposing the tax in question on this appellant, the State has interfered with matters which the relevant treaty and statutes leave to the exclusive province of the Federal Government and the Indians themselves. The tax is therefore unlawful as applied to *reservation Indians* with income derived wholly from reservation sources." (Emphasis added).

See O'Cheskey v. Hunt, 85 N.M. 388, 512 P.2d 961 (1973).

The issue is thus narrowed to whether the fact that taxpayer is a Commanche Indian destroys her status as a "reservation Indian" and makes her liable for state income tax.

We have neither found or been directed to a single case where it was regarded crucial that the Indian in question, although located on a reservation, was not a member of the tribe to which the reservation belonged. In the few cases thus far decided, tribal affiliation was held to be of no importance as long as there was the coalescence of the two facts—status as Indian and situs on a reservation.

We review the cases not because we deem them controlling as precedent, but rather because they provide the guidance necessary to decide the instant case. As will be seen, most are in the areas of either civil or criminal jurisdiction. However, we add that the jurisdiction or lack thereof of the State of New Mexico over the person of taxpayer does not dispose of the case. Notions of jurisdiction are relevant only insofar as they lend aid in determining our question of whether taxpayer is an Indian protected from state income taxation by the *McClanahan* holding.

■ Taxpayer's status as an Indian and her situs on a reservation makes her a reservation Indian for purposes of exclusive federal court jurisdiction over serious crimes. The Supreme Court in discussing 18 U.S.C. § 1153 (the Major Crimes Act) defined its scope in the following terms:

"The distinction is claimed to be that the offense under the statute is committed by an Indian, that it is committed on a reservation set apart within the state for residence of the tribe of Indians by the United States, and the fair inference is that the offending Indian shall belong to that or some other tribe." United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 (1885).

See also United States v. Burland, 441 F. 2d 1199 (9th Cir. 1971), cert. denied, 404 U.S. 842, 92 S.Ct. 137, 30 L.Ed.2d 77 (1971), where it was held that a federal court had exclusive jurisdiction over an Indian belonging to a tribe that had ceded jurisdiction to the state under 25 U.S.C. § 1322(a) because his alleged crime was committed on a reservation that had not so ceded jurisdiction, and Cook v. State, ——· S.D. ——, 215 N.W.2d 832 (1974), where it was held that state courts lacked jurisdiction to convict an Indian belonging to a California tribe who allegedly committed a crime on a South Dakota reservation.

■ Taxpayer's status as an Indian and her situs on a reservation makes her a reservation Indian for purposes of jurisdiction to extradite. In Arizona ex rel. Merrill v. Turtle, 413 F.2d 683 (9th Cir. 1969), cert. denied, 396 U.S. 1003, 90 S.Ct. 551, 24 L.Ed.2d 494 (1970) it was held that Arizona did not have jurisdiction to grant extradition of a Cheyenne Indian from Oklahoma living on the Navajo Reservation.

■ The New Mexico cases of Valdez v. Johnson, 68 N.M. 476, 362 P.2d 1004 (1961) and State v. Begay, 63 N.M. 409, 320 P.2d 1017 (1958) point in the same direction with regard to jurisdiction over civil actions and misdemeanors. In *Valdez* our Supreme Court upheld the trial court which had ruled that, "* * * no [state]

jurisdiction exists to try a civil dispute between two Indians living at the same Pueblo and arising out of an alleged civil wrong occurring at the Pueblo." The opinion recited that both plaintiff and defendant were residents of the Isleta Pueblo; but significantly, we think, it made no mention of tribal affiliation. Although the *Begay* case recited that Begay was a Navajo and that the incident occurred on the Navajo Reservation, the *Valdez* court, in citing to *Begay,* stated that it had there held that, " * * * the State did not have jurisdiction over an Indian driving an automobile on a portion of the highway in the Navajo Reservation." Again, there was no mention of tribal affiliation, status as Indian and situs on a reservation having been shown. See also, State Securities, Inc. v. Anderson, 84 N.M. 629, 506 P.2d 786 (1973) for a result contra with respect to jurisdiction, but yet supporting the general proposition that tribal affiliation is unimportant in determining the status of reservation Indian.

We have been apprised of three out-of-state cases directly in point and one analogous case dealing with an excise tax. Without exception, it was held that tribal affiliation is of no moment when determining the taxability by states of an Indian on a reservation. White Eagle v. Dorgan, 209 N.W.2d 621 (N.D.1973); Boxer v. State, (Dist.Ct. Roosevelt Co. Montana, March 22, 1974); In the Matter of Appeal of William A. Mehojah, Sr., (Ida.Bd.Tax App. No. 73–I–27, 1974); Confederated Salish and Kootenai Tribes v. Moe, 392 F. Supp. 1297 (U.S.D.C.Mont., Missoula Div., decided May 10, 1974).

We consider the foregoing in light of the fact that Indians qua Indians are often singled out for particular and special treatment. Morton v. Mancari, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) and cases cited therein; see also 25 U.S.C. § 13 (special welfare benefits), 42 C.F.R. § 36.-12(a)(2) (special health care benefits), and 25 U.S.C. § 452 (special educational assistance). In view of the United States'

"solemn commitment toward the Indians," Morton v. Mancari, supra, it is our opinion that taxpayer's status is that of "reservation Indian" within the meaning of the *McClanahan* case. The fact of the coalescence of status and situs announced in *McClanahan* is controlling. Any holding in Ghahate v. Bureau of Revenue, 80 N.M. 98, 451 P.2d 1002 (Ct.App.1969) which is contrary to this opinion is expressly overruled.

We do not view this case as being within the "assimilated in the general community" doctrine as described in *McClanahan.* See Worcester v. Georgia, 6 Pet. 515, 8 L.Ed. 483 (1832). The Bureau would have us view this case as being one where the Indian in question left or never inhabited a reservation set aside for her own use. Although we are not left with a clear meaning of the term, we believe that "general community" certainly means something more than other Indians' reservations.

Reversed and remanded.

It is so ordered.

SUTIN, J., concurs.

WOOD, C. J., dissents.

WOOD, Chief Judge (dissenting).

The facts in this case are sparse and, in my opinion, insufficient to show that Mary Jo Fox was entitled to a refund of state income tax. Mary Jo Fox is a Commanche residing and working on the Navajo Reservation at Shiprock, New Mexico. She is married to a non-Indian. She and her husband filed joint income tax returns and Mary Jo claims a refund for the tax years 1969 through 1972. These facts are some indication that she had become assimilated into the general community, *McClanahan,* supra, and thus has the tax status of a non-Indian. See Kahn v. Arizona State Tax Commission, 16 Ariz.App. 17, 490 P.2d 846 (1971); appeal dismissed, 411 U.S. 941, 93 S.Ct. 1917, 36 L.Ed.2d 404 (1973). Claiming a refund, Mary Jo Fox had the

burden of showing she was entitled to the refund. See United Veterans Org. v. New Mexico Prop. App. Dept., 84 N.M. 114, 500 P.2d 199 (Ct.App.1972); Kaiser Steel Corp. v. Property Appraisal Dept., 83 N.M. 251, 490 P.2d 968 (Ct.App.1971). The Bureau did not have the burden of showing she was assimilated, it was Mary Jo's burden to show she was not assimilated. She failed to do so.

Mary Jo Fox ignores these indications of assimilation. She presents her appeal on the basis that three facts show that New Mexico has no jurisdiction to tax her income, and that she is entitled to the refunds as a matter of law. Those facts are that she is an Indian, she resides on an Indian reservation, and her income is earned within the reservation. The authority said to require this result is *McClanahan,* supra.

Language used in *McClanahan,* supra, supports this view. *McClanahan,* supra, states:

"But it would vastly oversimplify the problem to say that nothing remains of the notion that reservation Indians are a separate people to whom state jurisdiction, and therefore state tax legislation, may not extend. * * *

* * * * * *

"The modern cases thus tend to avoid reliance on platonic notions of Indian sovereignty and to look instead to the applicable treaties and statutes which define the limits of state power. * *. *

"The Indian sovereignty doctrine is relevant, then, not because it provides a definitive resolution of the issues in this suit, but because it provides a backdrop against which the applicable treaties and federal statutes must be read. * * *

* * * * * *

" * * * [T]he reservation of certain lands for the exclusive use and occupancy of the Navajos and the exclusion of non-Navajos from the prescribed area was meant to establish the lands as within the exclusive sovereignty of the Navajos under general federal supervision. It is thus unsurprising that this Court has interpreted the Navajo treaty to preclude extension of state law—including state tax law—to Indians on the Navajo Reservation."

If the above-quoted language, with its emphasis on territorial sovereignty, means that New Mexico law does not cross the reservation line, then *McClanahan,* supra, poses the problem of whether any Indian residing within the Navajo Reservation, Navajo or non-Navajo, is a resident of New Mexico entitled to vote or to hold public office in New Mexico. N.M.Const., Art. VII, §§ 1 and 2. If territorial sovereignty is the key to New Mexico jurisdiction in matters involving Indians, *Montoya v. Bolack,* 70 N.M. 196, 372 P.2d 387 (1962), should be reconsidered.

*McClanahan,* supra, may fairly be read in a different light. It may be read to mean only that New Mexico may not tax the income of a Navajo living on the Navajo Reservation if the income is derived from employment within the Reservation. *McClanahan,* supra, may be read as holding that New Mexico's tax jurisdiction is barred because of the provisions of the treaty with the Navajos. If the expansive language of *McClanahan,* supra, is read in the light of the facts in that case, the references to "Indians" means "Navajos," and the reference to "reservation Indians" means Navajos or other Indians admitted by the Navajos with the consent of the United States as provided by Article II of the Treaty with Navajo Indians. 15 Stat. 667 (1868).

My view is that *McClanahan,* supra, applies to Navajos and other Indians admitted by the Navajos to use and occupy Navajo Reservation lands. The stipulated record shows that Mary Jo Fox is not a Navajo. The stipulated record does not show that the Navajos have admitted her to the use and occupancy of their Reservation. *McClanahan,* supra, in my view, does not bar New Mexico's jurisdiction to tax her income earned on the Navajo Reservation.

The majority holding otherwise, I dissent.