**SAC AND FOX NATION, Plaintiff–Appellee and Cross–Appellant,**

v.

**The OKLAHOMA TAX COMMISSION, Defendant–Appellant and Cross–Appellee.**

**Nos. 91–6236, 91–6237.**

United States Court of Appeals, Tenth Circuit.

June 16, 1992.

G. William Rice (N. Brent Parmer and Gregory H. Bigler with him on the briefs) of G. William Rice, P.C., Cushing, Okl., for plaintiff-appellee and cross-appellant.

David Allen Miley, Asst. Gen. Counsel (David Hudson, Gen. Counsel, with him on the briefs), Oklahoma Tax Com'n, Oklahoma City, Okl., for defendant-appellant and cross-appellee.

Before MOORE and BRORBY, Circuit Judges, and HUNTER,* District Judge.

BRORBY, Circuit Judge.

We are called upon here to resolve two issues arising from a conflict between the asserted taxing power of the State of Oklahoma and the tax immunity claimed by the Sac and Fox Nation, a federally recognized Indian tribe: (1) Whether the Oklahoma Tax Commission has legal authority to tax income derived from the Sac and Fox; and (2) whether the Oklahoma Tax Commission has legal authority to impose an excise tax and licensing fee on motor vehicles properly tagged by the Sac and Fox. We conclude the district court succinctly characterized the relevant issues and correctly applied existing precedent. We therefore affirm.

## I. Background

Both parties appeal the district court's ruling on cross motions for summary judgment.[1] Notably, neither party argues that summary judgment was procedurally incorrect due to the existence of a genuine issue of material fact. Instead, they challenge the legal determinations made by the district court after applying relevant authority to the stipulated facts. We review those determinations de novo. *Brown v. Palmer*, 944 F.2d 732, 733–34 n. 1 (10th Cir.1991) (citing *Gonzales v. Millers Casualty Ins. Co.*, 923 F.2d 1417, 1419 (10th Cir.1991)).

Factually, the record reveals this dispute arises primarily on land held in trust by the United States Government for the benefit of the Sac and Fox (also referred to as "the Tribe"). These lands consist of Tribal headquarters which are located in central Oklahoma on a quarter section (160 acres) excepted from operation of the Sac and Fox Allotment Agreement Act of February 13, 1891; one section (640 acres) reserved from the Allotment Agreement for the Sac and Fox School; and remaining individual trust allotments owned by the Sac and Fox.

The Sac and Fox brought this suit in response to Oklahoma's assertion of tax authority over income derived from the Tribe and over motor vehicles properly tagged by the Tribe. The Complaint prayed for an injunction preventing the Oklahoma Tax Commission from enforcing state tax laws against persons residing or employed within Sac and Fox territorial jurisdiction. The Tribe asserted sovereign immunity as the basis for its claim.

The Sac and Fox Tribe employs both tribal members and nonmembers. The earnings of all tribal employees are subject to a tribal income tax. While the Oklahoma Tax Commission does not challenge the Tribe's right to levy its own tax, the Commission claims all tribal employees must also pay state income taxes. The Commission enforces state income taxes against tribal members and nonmembers by issuing tax assessments against individuals failing to pay the state tax.

The Tribe also taxes the ownership of motor vehicles principally garaged on land within its jurisdiction. Upon payment of the tribal tax, each motor vehicle owner receives a Sac and Fox license plate, certifi-

---

* The Honorable Elmo B. Hunter, Senior District Judge for the District of Missouri, sitting by designation.

1. The district court held: (1) the State may properly levy and collect income tax on income derived from tribal employment on trust lands and received by non-tribal members; however, the State may not sue the Tribe for damages to collect the tax; (2) the State may not levy or collect income tax on income derived from tribal employment on trust lands and received by

tribal members; (3) the State may not, as a prerequisite to issuing an Oklahoma motor vehicle title, require payment of an excise tax and license tag fee for those three years a vehicle was tagged properly by the Tribe. The State appeals that part of the judgment restricting state tax authority over tribal members, while the Tribe cross appeals that part of the judgment granting the State tax authority over nonmembers.

cate of title and registration certificate. Here again, the Oklahoma Tax Commission does not contest the Tribe's tax authority. However, the State requires "retroactive" payment of money equivalent to the taxes, penalties, and interest it would have imposed upon motor vehicles during the time they were taxable by the Tribe as a prerequisite to issuance of an Oklahoma title and registration when such vehicles are sold, traded, or otherwise removed from tribal jurisdiction.

 Against this factual background, we begin our legal analysis from the premise first enunciated in *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), that direct state taxation of tribal property or the income of a tribal member earned solely on a reservation is presumed to be preempted, absent express congressional authorization. *See also California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 215–16 & n. 17, 107 S.Ct. 1083, 1091–92 & n. 17, 94 L.Ed.2d 244 (1987); *Bryan v. Itasca County*, 426 U.S. 373, 375–77, 96 S.Ct. 2102, 2104–06, 48 L.Ed.2d 710 (1976); *Moe v. Confederated Salish and Kootenai Tribes*, 425 U.S. 463, 475–76, 96 S.Ct. 1634, 1642–43, 48 L.Ed.2d 96 (1976); *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114 (1973). Conversely, a state may nondiscriminatorily tax nonmember activities on a reservation so long as such taxation does not con-

flict with relevant statutes or treaties or impermissibly interfere with a tribe's ability to govern itself. *See Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 175, 109 S.Ct. 1698, 1706–07, 104 L.Ed.2d 209 (1989); *Cabazon*, 480 U.S. at 215–16, 107 S.Ct. at 1091–92; *Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 151–61, 100 S.Ct. 2069, 2080–85, 65 L.Ed.2d 10 (1980). Moreover, we acknowledge that trust land, validly set apart for Indian use under government supervision, "qualifies as a reservation for tribal immunity purposes." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, — U.S. —, —, 111 S.Ct. 905, 907, 112 L.Ed.2d 1112 (1991).[2]

## II. Income Tax

### A. Taxation of Tribal Members

 In *McClanahan*, the Supreme Court held the State of Arizona could not levy or collect an income tax on wages earned by a Navajo tribal member from her work on the Navajo reservation. 411 U.S. at 173, 93 S.Ct. at 1263. Applying a federal preemption analysis against the backdrop of the Indian sovereignty doctrine, the Court reasoned that "by imposing the [income] tax ... the State has interfered with matters which the relevant treaty and statutes leave to the exclusive province of the Federal Government and the Indians themselves."[3] *Id.* at 165, 93 S.Ct. at 1259.

It would serve little purpose to retrace the *McClanahan* analysis here. The Sac

---

**2.** On appeal, the State asserts as error the district court's failure to determine the status of the Sac and Fox Reservation. In light of the Supreme Court's ruling in *Potawatomi*, we fail to see the relevancy of this issue. It appears as though the State of Oklahoma persists in fighting a battle it has already lost.

The focus in this type case is tribal immunity from state jurisdiction. The Supreme Court has made it clear that established principles of tribal immunity extend to trust lands as well as reservations. *Potawatomi*, 111 S.Ct. at 907. Oklahoma's attempt to circumvent this rule by shifting the focus and by emphasizing the physical dissimilarity between the large Indian reservations involved in prior cases and the randomly scattered trust lands of the Sac and Fox amounts to an exercise in futility. The State cites no authority for its proposition that the

size and physical distribution of Indian country should control the degree of tribal immunity asserted on those lands. The State does not challenge the presence of Sac and Fox trust land, nor does it assert the Sac and Fox Tribe is exercising jurisdiction outside that land. We therefore agree with the district court that the status of the Sac and Fox Reservation is not a material issue in this case.

**3.** We reject the State's contention that the tax immunity recognized in *McClanahan* is limited to only those Indians residing on the reservation, or in this case on tribal trust lands. The State's narrow reading of *McClanahan* violates the essence of that decision which afforded immunity from state taxation for Indian income derived from employment on tribal lands. *See Moe*, 425 U.S. at 475–76, 96 S.Ct. at 1642–43; *Mescalero*, 411 U.S. at 148, 93 S.Ct. at 1270.

and Fox is a federally recognized Indian tribe operating under a tribal constitution and federal corporate charter.[4] The treaties, statutes and correspondence cited by both parties indicate Congress consistently has recognized the integrity of the Sac and Fox Tribe and its right to self-govern within relevant jurisdictional boundaries. Nothing in the record conflicts with the acknowledged contemporary congressional goal of Indian self-government, including tribal self-sufficiency and economic development. *See Cabazon*, 480 U.S. at 216, 107 S.Ct. at 1091. This case is therefore indistinguishable from *McClanahan* in that tribal compensation of Sac and Fox member-employees falls totally within the sphere of activity reserved to the federal government and to the Sac and Fox Tribe itself. *See* 411 U.S. at 179–80, 93 S.Ct. at 1266–67.

The State asserts no congressional authority for imposing the state taxes at issue. Therefore, applying the *McClanahan* presumption, we conclude Oklahoma has exceeded its authority—the state income tax is unlawful as applied to Sac and Fox members whose income is derived solely from tribal sources on tribal lands.

## B. Taxation of Nonmembers

■ When evaluating Oklahoma's authority to tax the income of nonmember tribal employees, precedent weighs in the State's favor. Although the Supreme Court has never explicitly addressed state taxation of nonmember income derived from tribal sources, the Court has, in general, considered favorably nondiscriminatory state taxation of nonmember activities on a reservation so long as such taxation does not conflict with relevant statutes or treaties or impermissibly interfere with a tribe's ability to govern itself. *Colville*, 447 U.S. at 151–61, 100 S.Ct. at 2080–85; *Moe*, 425 U.S. at 481–83, 96 S.Ct. at 1645–46. *See also Cotton Petroleum*, 490 U.S. at 175, 109 S.Ct. at 1706–07; *Cabazon*, 480

U.S. at 215–16, 107 S.Ct. at 1091–92. In other words, state taxation of nonmember activity on a reservation is legitimate if the burden imposed on the tribe is minimal—if the tax does not frustrate tribal self-government or run afoul of congressional enactments concerning the affairs of reservation Indians. *Moe*, 425 U.S. at 483, 96 S.Ct. at 1646 (citations omitted).

The Tribe relies primarily on the Indian Commerce Clause and treaty language granting the Sac and Fox jurisdiction over all who "settle upon their lands" as support for its broad assertion of exclusive tax authority. Additionally, the Tribe asserts that decisions on state taxation of gaming within Indian country should control the determination of whether non-tribal members are subject to state income taxes.

■ The Tribe's argument is unavailing for several reasons. First, "[i]t can no longer be seriously argued that the Indian Commerce Clause, of its own force, automatically bars all state taxation of matters significantly touching the political and economic interests of the Tribes." *Colville*, 447 U.S. at 157, 100 S.Ct. at 2083. Second, the Tribe cites no authority showing the Supreme Court, this court, or any other court has interpreted the jurisdictional language of any Indian treaty so as to grant a tribe exclusive jurisdiction over non-tribal members. Third, we conclude the gaming decisions are entirely distinguishable from the present case. The payment of wages to nonmember employees is not comparable to the operation of bingo games designed to attract nonmembers onto Indian land in order to generate revenue. Finally, and most importantly, notwithstanding its bald assertion to the contrary, the Tribe has failed to show how the imposition of a state income tax on nonmember tribal employees frustrates tribal self-government. The Tribe argues that all tribal employees benefit from government services and regulations which protect workers, including an extensive tribal code, police, courts, etc.;

---

**4.** The Sac and Fox Tribe, like the Navajo in *McClanahan* and the Salish and Kootenai in

*Moe*, plainly has not abandoned its tribal organization.

however, the Tribe fails to demonstrate how state taxation of nonmember employees would interfere with providing these services or any other aspect of tribal government. We therefore conclude the Oklahoma Tax Commission may lawfully tax the income of those tribal employees who are not members of the Sac and Fox Tribe.[5]

## III. Motor Vehicle Tax

Tribal taxation and registration of motor vehicles applies "to all motor vehicles owned by a resident of, and principally garaged within the jurisdiction of the Sac and Fox Tribe." Sac and Fox General Revenue and Taxation Act, Title 14, Chapter 8, Section 802. Thus, the Tribe may tag motor vehicles owned by both members and nonmembers.[6]

The State of Oklahoma imposes two motor vehicle taxes. The first is the Vehicle Excise Tax calculated at three and one-half per cent of value and imposed upon transfer of legal ownership. The second tax is the annual registration fee imposed on every vehicle operated upon, over, along, or across any avenue of public access within Oklahoma. This tax is imposed in lieu of a personal property tax on automobiles. The Oklahoma Tax Commission enforces these taxes by requiring the purchaser of a vehicle previously tagged by the Tribe to pay back motor vehicle taxes for the time during which the vehicle was tribally tagged as a prerequisite to issuance of an Oklahoma title and license plate.

### A. Taxation of Tribal Members

■ *Moe* and *Colville* are dispositive on this issue: a state may not require a tribal member residing on tribal lands to pay state motor vehicle taxes, whether in the nature of property or excise taxes. *Colville*, 447 U.S. at 162–64, 100 S.Ct. at 2085–87; *Moe*, 425 U.S. at 469, 480–81, 96 S.Ct. at 1639, 1644–45. Although characterized by the State as a sales tax and a use tax in an attempt to circumvent established precedent, the first state motor vehicle tax is not enforced as a sales tax against Sac and Fox purchasers, and the State has offered no evidence to show the second tax is tailored to the amount of use outside Indian country. Under the circumstances, both Oklahoma motor vehicle taxes are best characterized as property taxes and therefore are flatly prohibited under *Moe* and *Colville*.

■ Although the State does not impose such motor vehicle taxes on tribal members directly, requiring nonmember purchasers to pay back taxes on tribally tagged vehicles burdens tribal members by diminishing the fair market value of their automobiles upon sale. We will not permit the State to tax indirectly what it cannot tax directly. We therefore hold the State may not tax motor vehicles for periods when such vehicles were licensed properly to tribal members by the Tribe.

### B. Taxation of Nonmembers

■ The Tribe again relies on the Indian Commerce Clause and treaty language as support for its assertion of exclusive tax authority over motor vehicles principally garaged on tribal lands. The Tribe also continues to assert that Indian gaming decisions should control this issue.

■ Again, we reject these arguments. As previously discussed, the Indian Commerce Clause provides no independent protection from state taxation, and the Tribe

---

**5.** Note, however, the State may not sue the Tribe to recover previously uncollected taxes. *Potawatomi*, —— U.S. at ——, 111 S.Ct. at 911.

**6.** The district court apparently was mistaken regarding the scope of tribal motor vehicle licensing. Operating under the assumption that only tribal members could obtain tribal tags, the district court limited its ruling to the State's authority (or lack thereof) to tax tribal members owning automobiles properly tagged by the Sac and Fox Tribe. While we conclude this ruling is correct, we go further to address the State's authority to tax non-tribal members owning automobiles properly tagged by the Tribe.

cites no authority in support of its broad interpretation of treaty language. The gaming decisions are even more distinguishable in this context as the Tribe's sale of motor vehicle tags to non-tribal members more closely resembles the marketing of a tax exemption clearly disfavored in *Colville. See* 447 U.S. at 154–55, 160–61, 100 S.Ct. at 2081–82, 2084–85.

The Tribe emphasizes that the motor vehicles subject to tribal taxation are garaged within Indian country and are often parked for extended periods within Indian country while the nonmember owners work. The Tribe also asserts that nonmember motor vehicle owners receive government services from the Sac and Fox. Nevertheless, the relevant issue is tribal immunity. The Tribe cannot argue seriously that motor vehicles owned by non-tribal members constitute tribal property. Furthermore, the fact that non-tribal members may live and garage their motor vehicles on tribal land does not accord those individuals tribal status. Here again, the Tribe has failed to show how the imposition of state taxes on nonmembers' motor vehicles frustrates tribal self-government. We therefore hold the State may lawfully tax motor vehicles owned by non-tribal members.

## IV. Conclusion

Evaluating the record presented on appeal in light of controlling Supreme Court precedent, we readily conclude the Oklahoma Tax Commission may not lawfully tax the income of tribal members who are employed by and receive wages from the Sac and Fox Tribe. The Commission is also without authority to collect taxes on motor vehicles for periods when such vehicles were licensed properly to tribal members by the Tribe. Conversely, the Commission may tax the income of non-tribal members employed by the Sac and Fox as well as those tribally-tagged motor vehicles owned by non-tribal members. The district court' ruling on cross motions for summary judgment is therefore AFFIRMED.