### In re Carmen SMITH and Merrenda Joyce Smith, Debtors.

### No. B–92–489–PHX–GBN.

United States Bankruptcy Court, D. Arizona.

Sept. 14, 1993.

Michael Woolfenden, Phoenix, AZ, for debtors.

Mary H. LeLaat, Asst. Atty. Gen., Phoenix, AZ, for Arizona Dept. of Revenue.

Ralph M. McDonald, Phoenix, AZ, Trustee.

## ORDER

GEORGE B. NIELSEN, Jr., Bankruptcy Judge.

This matter arises on the debtors' objection to the claim of the Arizona Department of Revenue, which asserts a $7,000 priority income tax claim. 11 U.S.C. § 507(a)(7). Since debtors did not file returns for the relevant period, creditor filed an estimated claim.

The joint debtors are Native Americans. Mrs. Smith is an enrolled member of the Hopi Tribe. Mr. Smith ethnically is a Navajo, although not an enrolled member of the Navajo Nation. Both debtors were married and lived on the Hopi Reservation in Arizona during the relevant tax periods. Both derived their income from on-reservation employment. Debtors object that federal law does not subject them to state income tax liability. The state argues Mr. Smith's status as a nontribal member authorizes such taxation, although he is a Native American living and working on a recognized reservation.

The Court concludes the federal proscription against state taxation of individuals residing on a reservation is directly dependent on the taxpayer's tribal status. Accordingly, debtors' objection to the claim is partially overruled. The agency will submit an amended claim omitting liability against Mrs. Smith due to her status as a Hopi Tribal member.

### I

At issue is whether the proscription against state taxing authority applies where the taxpayer is a Native American who lives and works on a reservation but is not a member of the reservation.

In *McClanahan v. State Tax Commission of Arizona*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), the Court addressed whether Arizona could impose income tax on a reservation Indian whose entire income came from reservation sources.

Appellant was an enrolled member of the Navajo Tribe who lived on the reservation. She alleged all her income was derived from the reservation. State income taxes were withheld from her earnings. She instituted a protest. After being unsuccessful in Arizona courts, she appealed to the United States Supreme Court, which reversed. *Id.*, at 164–67, 93 S.Ct. at 1258–59.

The case involved the narrow question whether a state may tax a reservation Indian for income earned exclusively on the reservation. *Id.*, at 167–69, 93 S.Ct. at 1260.

The Court reviewed Indian sovereignty, noting the trend is to examine applicable treaties that define state power. *Id.*, at 171–73, 93 S.Ct. at 1262. *Id.* Although the 1868 treaty nowhere explicitly states Navajos were free from state taxes, the Court held the treaty was not an ordinary contract. *Id.*, at 173–75, 93 S.Ct. at 1263. In interpreting Indian treaties, doubtful expressions are resolved in favor of tribes. *Id.* Given this construction and the tradition of Indian independence, the Court concluded reservation of lands for exclusive use by Navajos was meant to establish an exclusive sovereign under general federal supervision. *Id.*, at 173–75, 93 S.Ct. at 1263.

The Court also examined the Arizona Enabling Act. 36 Stat. 569. This enactment provides nothing would preclude the state from taxing lands and property outside an Indian reservation. Although exemptions from tax laws should be clearly expressed, the Court concluded it construed language far more ambiguous as providing an Indian tax exemption. *Id.*, at 175–76, 93 S.Ct. at 1264.

The Court further noted the Buck Act provides guidance. 4 U.S.C. § 104, *et seq.* Section 106(a) grants states authority to impose an income tax on residents of federal areas. Section 109 expressly provides that nothing in the Act authorizes levy or collection of taxes from Indians not otherwise taxed. *Id.*, at 175–76, 93 S.Ct. at

1264. The legislative history made clear this was meant to except reservation Indians from coverage of the Buck Act. *Id.*, at 175–78, 93 S.Ct. at 1264–65.[1]

The Court rejected Arizona's argument that since it was taxing individuals, not the tribe or reservation, it had not infringed Indian rights. Imposition of state taxes upon reservation members could not be reconciled with tribal self-determination. Since appellant's income was derived wholly from reservation sources, it was within the sphere that treaties and statutes leave for the Federal Government and Indians themselves. *Id.*, at 178–80, 93 S.Ct. at 1266.

The Court also rejected a distinction between taxes on land and income, concluding it could not accept the argument it is irrelevant whether a state tax infringes on individual Indians. Congress legislated on Indian matters and most often dealt with tribes as collective entities. However, those entities are composed of individual Indians. The legislation confers individual rights. Therefore, the question was whether state action infringed on the right of reservation Indians to make their own laws. *Id.*, at 180–81, 93 S.Ct. at 1267. The Court concluded appellant's rights were violated when the state collected a tax it had no jurisdiction to impose.

In a subsequent review, the Ninth Circuit noted:

Although the Indian sovereignty doctrine is still relevant, "because it provides a backdrop against which the applicable treaties and federal statutes must be read," it is no longer the major focus of analysis.... Instead we must carefully analyze the applicable federal statutes to determine whether state action has been pre-empted. If not, the state statute need only satisfy the test laid down in *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), *viz.* that it not infringe on the rights of reservation Indians to make their own laws....

1. The Court also noted Arizona had not assumed civil or criminal jurisdiction over the

Navajo Reservation under 25 U.S.C. § 1322.

*Fort Mojave Tribe v. County of San Bernardino,* 543 F.2d 1253, 1255–56 (9th Cir.1976); *cert. denied,* 430 U.S. 983, 97 S.Ct. 1678, 52 L.Ed.2d 377 (1977).

## II

In a later case, Washington asserted power to impose sales and tobacco taxes on Indians living on the reservation but not enrolled in the tribe. The Supreme Court held federal statutes, given the broadest reading, cannot pre-empt state power to impose taxes on Indians not members of the tribe. *Washington v. Confederated Tribes of Colville Indian Reservation,* 447 U.S. 134, 160–62, 100 S.Ct. 2069, 2085, 65 L.Ed.2d 10 (1980). The Court noted:

> [T]he mere fact that nonmembers resident on the reservation come within the definition of "Indian" for purposes of the Indian Reorganization Act of 1934 ... does not demonstrate a congressional intent to exempt such Indians from state taxation.
>
> Nor would the imposition of Washington's tax on these purchasers contravene the principle of tribal self-government, for the simple reason that nonmembers are not constituents of the governing Tribe.... [T]hose Indians stand on the same footing as non-Indians resident on the reservation. There is no evidence that nonmembers have a say in tribal affairs or significantly share in tribal disbursements.... Therefore ... the State's interest in taxing these purchasers outweighs any tribal interest that may exist in preventing the State from imposing its taxes.

*Id.,* at 161, 100 S.Ct. at 2085.

## III

The Court again expressed the distinction between members and nonmembers in *Duro v. Reina,* 495 U.S. 676, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990). The Court noted exemption from state taxation for residents of a reservation is determined by tribal membership, not by reference to Indians as a class. States may not impose taxes on tribal members on the reservation, as this interferes with internal governance and self-determination. This concern does not apply to taxation of non-members, even when they are Indians. *Id.,* at 685–87, 110 S.Ct. at 2060.

The recent ruling in *Oklahoma Tax Commission v. Sac and Fox Nation,* — U.S. —, 113 S.Ct. 1985, 124 L.Ed.2d 30, *reh'g denied,* — U.S. —, 113 S.Ct. 3066, 125 L.Ed.2d 748 (1993), further supports state taxation of nontribal members. There, Oklahoma argued *McClanahan* applied only to tribes on established reservations. *Id.,* — U.S. at —, 113 S.Ct. at 1989. Oklahoma reasoned the state had complete jurisdiction over the Sac and Fox, because an 1891 Treaty disestablished the Sac and Fox Reservations. *Id.*

The Court held the residence of a tribal member is a significant component of the *McClanahan* presumption against state tax jurisdiction. A tribal member need not live on a formal reservation to be outside the state's taxing jurisdiction. It is enough the member lives in "Indian Country." *Id.,* — U.S. at —, 113 S.Ct. at 1991–92.

This case does not help debtor. The opinion is replete with references to "tribal members" who live in Indian country. The Supreme Court noted the lower court specifically held income of nonmember tribal employees could be taxed. *Id.,* at —, 113 S.Ct. at 1990, citing *Sac and Fox Nation v. Oklahoma Tax Commission,* 967 F.2d 1425, 1429–30 (10th Cir.1992). Although the Circuit opinion was vacated and the case remanded, the judgment was vacated not because the Supreme Court disagreed with this holding. Instead, the Court remanded to determine if the tribal members proposed to be taxed lived in Indian country. *Id.,* — U.S. at —, 113 S.Ct. at 1993.

In short, although the Court had an opportunity to revisit the distinction between tribal members and nonmembers, it chose not to do so, implicitly endorsing the distinction in *Colville.*

## IV

Against this authority, there are cases that hold a nonmember Indian living and working on a reservation could not be

taxed by the state. *Fox v. Bureau of Revenue*, 87 N.M. 261, 531 P.2d 1234 (1975), *cert. denied*, 424 U.S. 933, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976); *LaRoque v. State*, 178 Mont. 315, 583 P.2d 1059 (1978).

In *LaRoque*, Montana argued appellants' status as nonmembers denied them the protection of *McClanahan*. The state supreme court disagreed. *Id.*, 583 P.2d at 1063–65. The court held the primary factor limiting state jurisdiction was whether the activity occurred in areas established by treaty for exclusive use and control by Indians. The court stated:

> Situs of the activity is the primary factor in determining whether state taxation jurisdiction exists, not the status of the individual as enrolled or non-enrolled. We read the phrase "reservation Indian" in *McClanahan* to mean Indians residing on the reservation, and not just Indians who are enrolled members of the tribe.

> *Id.*, 583 P.2d at 1064.

Since the *LaRoque* appellants were Indians residing on the reservation, with incomes derived wholly from reservation sources, their activity was totally within the sphere that treaties and statutes leave for the Federal Government and the Indians themselves. The status of the individual as a nonenrolled member was of no importance. *Id.*

The problem with the analysis of *LaRoque* and *Fox* is both were decided before *Colville* and *Reina*, where the Court rejected the principle that simply residing on the reservation was sufficient for a nonmember to avoid state taxation. Status as enrolled or nonenrolled was critical in determining whether the state was interfering with internal governance and self-determination. *Duro v. Reina*, 495 U.S. at 686, 110 S.Ct. at 2060. "Exemption from state taxation for residents of a reservation ... is determined by tribal membership, not by reference to Indians as a general class." *Id.* Given *Reina* and *Colville*, it does not appear this Court should rely on *LaRoque* and *Fox*

. . . .

## V

Based on Supreme Court authority, the state can tax a nonmember Indian living on a reservation. The objection to the claim is partially overruled and partially sustained. An amended claim will be filed which reflects only liability for income earned by Mr. Smith. Income earned by Mrs. Smith is not taxable as she is a member of the Hopi Tribe.