COOK, Appellant v. STATE, Respondent

(215 N.W.2d 832)

(File No. 11326. Opinion filed March 15, 1974)

Terry L. Pechota, Mark V. Meierhenry, Rosebud, for petitioner and appellant.

Kermit A. Sande, Atty. Gen., Walter W. Andre, Asst. Atty. Gen., Pierre, Larry Long, State's Atty., Bennett County, Martin, for respondent.

DUNN, Justice.

This is an appeal from a judgment of the Tenth Judicial Circuit which denied petitioner relief from a state sentence where it was contended that the State of South Dakota lacked criminal jurisdiction in Martin, Bennett County, South Dakota. Appellant is an enrolled 3/8 Concow and Redwood Indian, which is a tribe of Indians recognized by the Bureau of Indian Affairs. On May 1, 1971, he was arrested for the crime of third degree burglary on a deeded lot located in Martin, Bennett County, South Dakota. He pled guilty to the crime and was sentenced to the South Dakota penitentiary. The appeal here is from a denial of post-conviction relief where he contended that he, as an Indian, was convicted of a state crime in Indian Country where the State of South Dakota had no jurisdiction.

The appellant's first contention is that the court erred in holding that an Indian must be a member of the Oglala Sioux Tribe to question the State of South Dakota's jurisdiction over a crime which he committed on the Pine Ridge Indian Reservation. Once the parties stipulated that the appellant was an Indian, it follows that the trial court was in error on this point. In fact the State conceded as much in oral argument. In cases involving the Federal Court's jurisdiction over certain major crimes, the Act has

never been interpreted to refer only to Indians of the Tribe residing on the reservation which was the situs of the offense. Generally it has been held that the Act covered the offenses of an Indian of some Tribe, committed within the limits of the reservation. United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228, and United States v. Jewett, 8 Cir., 438 F.2d 495.

The second question raised by appellant was whether the court erred in not finding that Bennett County was Indian Country. This Court has had occasion in two prior cases to rule on the issue now raised. In State of South Dakota ex rel. Hollow Horn Bear v. Jameson, 1959, 77 S.D. 527, 95 N.W.2d 181, this Court stated "That the act (Act of May 27, 1910) was motivated by a congressional purpose to reduce the area of Pine Ridge is manifest", in holding that the State of South Dakota had jurisdiction over Bennett County. This was reaffirmed in State of South Dakota ex rel. Swift v. Erickson, 1966, 82 S.D. 60, 141 N.W.2d 1.

We are being asked to overrule these decisions on a basis of subsequent cases decided after Seymour v. Superintendent, 1962, 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346. The Seymour case was the beginning of ten years of confusion over jurisdiction on Indian reservations. Up until Seymour, deeded land within the confines of an Indian reservation was quite generally held subject to state jurisdiction, but the Supreme Court held in Seymour that the opening of an Indian reservation for settlement by non-Indians is not inconsistent with its continued existence as a reservation. This theory was first adopted by the Eighth Circuit Court of Appeals in City of New Town, North Dakota v. United States, 8 Cir., 454 F.2d 121, in a determination that the boundaries of the Fort Berthold Reservation had not been diminished by the Act of June 1, 1919, which opened up a portion of the reservation for settlement. Following this case came Condon v. Erickson, 8 Cir., 478 F.2d 684, where it was held that the original boundaries of the Cheyenne Indian Reservation were unaffected by the Act of May 28, 1908. In Condon, however, the court stated:

"Each case, of course, must be decided under the applicable statute and upon its own facts. Where as here, however, the question presented is close, we conclude that a holding favoring federal jurisdiction is required unless Congress has *expressly or by clear implication* diminished the boundaries of the reservation opened to settlement."

State courts sought, on a case to case basis to follow this direction that,

"federal jurisdiction is required unless Congress has *expressly or by clear implication* diminished the boundaries of the reservation opened to settlement."

This Court in State v. Molash, 86 S.D. 558, 199 N.W.2d 591, found that the language used in the Act of 1913 did not diminish that part of the Standing Rock Indian Reservation embracing the city of McLaughlin. This was done in view of the language of the Act that "surplus" lands were to be sold under the homestead act and townsite laws for not less than the price fixed by the Act; that allotments to every Indian were made from the area previous to the sale; and that the sale price was to be held in trust for the Indians. This was similar to the language in Seymour, and New Town, supra. Contrary thereto, in State v. Williamson, S.D., 211 N.W.2d 182, this Court found that the Act of 1874 disestablished the towns of Lake Andes and Wagner from the Yankton Sioux Reservation under the following language:

"Article I.

'The Yankton tribe of Dakota or Sioux Indians hereby cede, sell, relinquish, and convey to the United States all their claim, right, title, and interest in and to all the unallotted lands within the limits of the reservation set apart to said Indians as aforesaid.'

Article II.

'In consideration for the lands ceded, sold, relinquished, and conveyed to the United States as aforesaid, the United States stipulates and agrees to pay to the said

Yankton tribe of Sioux Indians the sum of six hundred thousand dollars ($600,000), as hereinbefore provided for.' "

Also, in DeCoteau v. District County Ct. for Tenth Jud. Dist., S.D., 211 N.W.2d 843 (which involved jurisdiction of a delinquent child rather than a criminal defendant) this Court held that the following language used in the December 12, 1889 agreement with the Sisseton and Wahpeton Bands of the Dakota or Sioux Indians:

"'hereby cede, sell, relinquish, and convey to the United States all their claim, right, title, and interest in and to all the unallotted lands within the limits of the reservation set apart to said bands of Indians as aforesaid remaining after the allotments and additional allotments provided for in article four of this agreement shall have been made.' "

indicated a diminished reservation.

While the present case was pending before this Court, two further cases dealing with Indian jurisdiction have been handed down by the Federal Courts. On December 7, 1973 the Eighth Circuit Court of Appeals in United States of America ex rel. Feather et al. v. Erickson, 489 F.2d 99, held that the Act of 1891 (this is the same Act passed on in DeCoteau v. District County Court, supra) wherein the Indians agreed to "cede, sell, relinquish, and convey" the surplus land to the United States, was no different than the language in Condon, and that "the reservation here was *not sold* to the government outright but merely opened for settlement." (emphasis supplied). On February 6, 1974 the United States District Court for the District of South Dakota issued a memorandum decision finding that the Rosebud Indian Reservation had been diminished by the Acts of April 23, 1904 (33 Stat. 254) Gregory County, March 2, 1907 (34 Stat. 1230) Tripp and Lyman Counties, and May 30, 1910 (36 Stat. 448) Mellette County. The Act of May 30, 1910 is identical to the Act of May 27, 1910 (36 Stat. 440) involving Bennett County. [1]

1. For a comprehensive study of Legislative History, see South Dakota Law Review, Vol. 18, No. 1, 1973.

In view of the present status of the lower court decisions on the Indian jurisdiction question, it seems an appropriate time to go back to the basic pronouncements of the United States Supreme Court upon which these decisions were supposedly based.

The United States Supreme Court has spoken twice on the subject in the last twelve years. In Seymour v. Superintendent of Washington State Penitentiary, 1962, 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346, and in Mattz v. Arnett, 1973, 412 U.S. 481, 93 S.Ct. 2245, 37 L.Ed.2d 92.

In Seymour the Court was dealing with the Colville Reservation in the State of Washington. The Act of 1892 (27 Stat. 62) diminishes the size of this reservation in the following language:

> "subject to reservations and allotments made to individual Colville Indians, about one-half of the original Colville reservation, since commonly referred to as the 'North Half,' should be 'vacated and restored to the public domain' ".

This Act did not, however, purport to affect the status of the remaining part of the reservation, since known as the "South Half" or the "diminished Colville Indian Reservation".

The question in this case was in regard to a burglary that occurred on the so-called South Half or "diminished Colville Indian Reservation". An Act of 1906 (34 Stat. 80) provided for the sale of mineral lands and for the settlement and entry under the homestead laws of other surplus lands remaining on the diminished Colville Reservation after allotments were first made and patents issued for 80 acres of land to "each man, woman, and child" either "belonging to or having tribal relations on said Colville Indian Reservation".

Nowhere in the 1906 Act is there found any language that would indicate a sale or a cessation or a relinquishment of the so-called South Half of the Reservation. Further, it provides for allotments to the Indians.out of the South Half or the diminished Colville Reservation. Under these circumstances the United States

Supreme Court held that the South Half of the Colville Reservation was not diminished by the Act of 1906 and was still Indian Country.

In Mattz v. Arnett, the Court was dealing with the Act of June 17, 1892 (27 Stat. 52), which provided:

"That all of the lands embraced in what was Klamath River Reservation in the State of California, as set apart and reserved under authority of law by an Executive order dated November sixteenth, eighteen hundred and fifty-five, are hereby declared to be subject to settlement, entry, and purchase under the laws of the United States granting homestead rights and authorizing the sale of mineral, stone, and timber lands: *Provided,* That any Indian now located upon said reservation may, at any time within one year from the passage of this act, apply to the Secretary of the Interior for an allotment . . . And the Secretary of the Interior may *reserve* from settlement, entry, or purchase any tract or tracts of land upon which any village or settlement of Indians is now located, and may set apart the same for the permanent use and occupation of said village or settlement of Indians . . . *Provided further,* That the proceeds arising from the sale of said lands shall constitute a fund to be used under the direction of the Secretary of the Interior for the maintenance and education of the Indians now residing on said lands and their children."

Here again there are no words indicating a sale, or cessation or relinquishment of the lands embraced in the reservation. The surplus lands, after allotments to the Indians, were simply declared subject to settlement and purchase and the proceeds arising from said sale would be set aside in a fund for the benefit of the Indians. Under these facts, the United States Supreme Court in 1973, found that the Klamath River Reservation was not extinguished or diminished and was still Indian Country.

In both of these United States court decisions it should be noted that there was great stress put on the fact that there was no

language expressly vacating the portion of the reservation in question; and on the further fact that provision was made for the Indians to have allotments and to remain on the portion of the reservation in question after the enactment of the Act.

■ In the light of these decisions, let us consider the Act of May 27, 1910 (36 Stat. 440) which controls the present case. This Act authorized the Secretary of the Interior

> "to sell and dispose of all that portion of the Pine Ridge Indian Reservation, in the State of South Dakota, lying and being in Bennett County (and goes on to describe a contiguous portion of the Pine Ridge Indian Reservation by metes and bounds, including Martin, South Dakota)
> \* \* \*."

Some marked differences are readily apparent. First of all, the Act is not couched in the language of "opening up a portion of the Pine Ridge Indian Reservation for settlement," but rather the language is "to sell and dispose of all that portion of the Pine Ridge Reservation", and a full description is given cutting off a contiguous portion of the original reservation.

Again on the question of allotments, upon which the Seymour and Mattz cases laid great stress, the Act provided,

> "That any Indians to whom allotments have been made on the tract to be *ceded* may, in case they elect to do so before said lands are offered for sale, relinquish same and select allotments in lieu thereof on the *diminished* reservation \* \* \*." (emphasis supplied)

This is similar to the language used in the 1892 Act involving the North Half of the Colville Indian Reservation (which is conceded in Seymour to be diminished on that portion of the Reservation) while the "South Half" or the "diminished Colville Indian Reservation" was still reserved by the Government for the use and occupancy of the Colville Indians.

It refers to allotments on the tract to be "ceded". "Cede", according to Black's Law Dictionary, means "To yield up; to assign; to grant. Generally used to designate the transfer of territory from one government to another." Citing Goetze v.

United States, C.C., 103 F. 72. It further provides that those Indians with allotments on the tract ceded, could select allotments in lieu thereof on the "diminished reservation", and thus retain any benefits flowing from the Government on an Indian reservation.

Contrary to Mattz and Seymour, we do have clear language of cessation and sale of a contiguous portion of the Pine Ridge Indian Reservation. Contrary to Mattz and Seymour, we have a provision for switching allotments so that Indians can move to the "diminished reservation". The language in the Act that refers to the remainder of the reservation after the sale as the "diminished reservation", is most significant as we have before us the precise question of whether the Pine Ridge Indian Reservation was diminished by the Act of May 27, 1910. Thus we find nothing in either Seymour or Mattz that would warrant overruling our earlier decisions in South Dakota ex rel. Hollow Horn Bear v. Jameson, or State of South Dakota ex rel. Swift v. Erickson, supra.[2] In view of our finding that Bennett County is not Indian Country, the error of the trial court in finding that Donald M. Cook was not an Indian for the purposes of federal jurisdiction becomes harmless.

The judgment of the trial court is affirmed.

All the Justices concur.

---

2. We find nothing in State v. Molash, 86 S.D. 558, 199 N.W.2d 591, incompatible with this decision. The Act of 1913 (37 Stat. 675), while it also is framed in the words of selling and disposing of a tract of land (describing it), provides for "allotments to be made to every man, woman, and child belonging to or holding tribal relations in said reservation", prior to opening the tract for purchase under the Homestead Act, with the allotments to be made from the tract being sold. It even provides allotments for children not yet born to be made after the completion of the proclamations for entry into the surplus lands. The Act of May 27, 1910 not only does not make provision for Indian allotments on the land to be sold, but makes provision for any Indians who already have allotments on the tract to be ceded to relinquish the same and select allotments in lieu thereof on the *diminished* reservation. Thus the 1913 Act indicates an intent to sell surplus lands after taking care of the Indians with allotments, while the 1910 Act indicates an intent to vacate the tract and move Indians already having allotments on the ceded tract to the diminished reservation.