## UNITED STATES ex rel. Donald M. COOK, Respondent-Appellant,

### v.

## Gerald PARKINSON, Warden of South Dakota State Penitentiary, having custody of Petitioner, and the County of Bennett, Respondents-Appellees.

### No. 75–1306.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1975.

Decided Oct. 29, 1975.

Art Bunce, Escondido, Cal., Terry L. Pechota, Fort Thompson, S. D., for Donald M. Cook.

Tom D. Tobin, Atty. for Bennett County, Winner, S. D., for Bennett County.

Harvey C. Jewitt, Sp. Asst. Atty. Gen., Aberdeen, S. D., for the State of S. D.

Walter Kiechel, Jr., Acting Asst. Atty. Gen., Edmund B. Clark and Neil T. Proto, Attys., Dept. of Justice, Washington, D. C., filed brief for U. S., amicus curiae.

Before VAN OOSTERHOUT, Senior Circuit Judge, and BRIGHT and ROSS, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

Donald M. Cook was convicted upon a plea of guilty to the crime of third degree burglary on April 29, 1971, at Martin, Bennett County, South Dakota. In a post-conviction relief proceeding the South Dakota Supreme Court denied Cook's claim that South Dakota had no jurisdiction over him because he was an Indian[1] and that the situs of the crime, Bennett County, was Indian Country as defined in 18 U.S.C. § 1151. *Cook v. State,* 215 N.W.2d 832 (S.D.1974). Cook subsequently petitioned the United States District Court for the District of South Dakota for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The writ was issued and Bennett County was allowed to intervene as a party defendant to the habeas corpus proceeding. Based upon certain documents entered into evidence by stipulation and briefs submitted by the parties, Judge Andrew W. Bogue discharged the writ by order and memorandum opinion reported as *Cook v. Parkinson,* 396 F.Supp. 473 (D.S. D.1975). Petitioner Cook has taken a timely appeal from such final order. We affirm and hold that the Act of May 27, 1910, terminated the reservation status of Bennett County and that South Dakota state courts have jurisdiction over conduct occurring on non-Indian lands in Bennett County.

The issue before the district court was a narrow one: Whether Congress in passing the Act of May 27, 1910, 36 Stat. 440, intended to remove Bennett County, South Dakota, from the confines of the Pine Ridge Indian Reservation in South Dakota, thus diminishing the area and

---

1. Appellant is an enrolled member of the Concow and Redwood Tribe of California Indians.

exterior boundaries of the reservation. If Congress did intend for such reduction, Bennett County is not within the reservation and South Dakota has jurisdiction over crimes committed therein which are not committed on lands allotted to Indians.[2] Conversely, if Bennett County remains within the Pine Ridge Reservation the tribe and the Federal Government have jurisdiction over crimes committed therein, 18 U.S.C. §§ 1152, 1153, and South Dakota lacked jurisdiction to try appellant on the burglary charge.[3]

Bennett County was within the exterior boundaries of the Pine Ridge Reservation as that reservation was defined by the Act of March 2, 1889, 25 Stat. 888. No further changes in the Pine Ridge Reservation were made until the Act of May 27, 1910, the Act in question in this case. The State of South Dakota has, without significant challenge by the Indians, exerted jurisdiction over crimes committed in Bennett County continuously since the Act of 1910, a period of nearly sixty-five years.

The operative language of the 1910 Act provides:

. . . [T]he Secretary of the Interior be, and he is hereby authorized and directed, as hereinafter provided, to sell and dispose of all that portion of the Pine Ridge Indian Reservation, in the State of South Dakota, lying and being in Bennett County and described as follows. . . . [Act of May 27, 1910, § 1 (36 Stat. 440)].

 Following such language was a provision allowing Indians then holding allotments in Bennett County the privilege of reselecting an allotment within the reduced reservation. Such provision reads:

Provided that any Indian to whom allotments have been made on the *tract to be ceded* may, in case they elect to do so before said lands are offered for sale, relinquish same and select allotments in lieu thereof *on the diminished reservation.* [Emphasis added.]

We agree with Judge Bogue that "[t]he words used in the 1910 Act, when given their plain and ordinary meaning, show a clear congressional intent on the face of the Act to diminish the Pine Ridge Reservation by authorizing the Secretary of the Interior to sell and dispose of the described tract of land to be ceded." *Cook v. Parkinson, supra,* 396 F.Supp. at 479. We recognize, as appellant points out, that "reservation status may survive the mere opening of a reservation to settlement, even when the moneys paid for the land by the settlers are placed in trust by the Government for Indians' benefit." *DeCoteau v. District County Court,* 420 U.S. 425, 444, 95 S.Ct. 1082, 1093, 45 L.Ed.2d 300 (1975). Nevertheless, pursuant to the Act of 1910 Bennett County was not only opened to settlement but in our view was removed by cession from the Pine Ridge Indian Reservation. In his memorandum opinion, Judge Bogue has thoroughly and exhaustively treated the history of the Act of 1910, including negotiations with the Ogalala Sioux Indians, Congressional statements by the authors of the Act and subsequent legislation.[4] Such background, though not necessarily required in view of the unambiguous terminology used in the Act, conclusively shows that during the time period in question both the Ogalala Sioux Indians and Congress intended that the Act of 1910 would sever Bennett County from and reduce the boundaries of the Pine Ridge Indian Reservation. In view of the complete treatment Judge Bogue has given to such history, we see no purpose in further extending this opinion on the issue.

---

2. It is conceded that the crime committed by appellant did not occur on Indian allotments within Bennett County.

3. See *DeCoteau v. District County Court,* 420 U.S. 425, 427 n. 2, 95 S.Ct. 1082, 43 L.Ed.2d 300 (1975).

4. For authority that such history may be considered in cases of this type *see DeCoteau v. District County Court,* 420 U.S. 425, 445–446, 95 S.Ct. 1082, 45 L.Ed.2d 300 (1975); *Rosebud Sioux Tribe v. Kneip,* 521 F.2d 87 at 90 n. 7 (8th Cir., filed July 16, 1975).

Each case of this type must be decided on its own set of facts, usually including the applicable statute and accompanying legislative history. *United States ex rel. Condon v. Erickson,* 478 F.2d 684, 689 (8th Cir. 1973). Nevertheless, we find strong support for our holding in our recent case, *Rosebud Sioux Tribe v. Kneip,* 521 F.2d 87 (8th Cir. 1975). The issue in *Rosebud* was whether the Acts of April 23, 1904, March 2, 1907, and May 30, 1910, removed all or parts of Gregory, Tripp, Lyman and Mellette Counties in South Dakota from the Rosebud Reservation as it was defined in the Act of March 2, 1889. Judge Smith, in an exhaustive treatment of the history of the three Acts, concluded that the lands in question were indeed severed from the Rosebud Reservation by the 1904, 1907, and 1910 Acts. Of particular relevance here is the Act of May 30, 1910. It was passed just 3 days after the Act of May 27, 1910, the Act here in question. The operative section of the Act here in question, as set out *supra,* and that in the May 30, 1910 Rosebud Act are substantially identical.[5] The first proviso in § 1 of each Act permits an Indian who has been previously allotted land "on the tract to be *ceded*" (emphasis added) to substitute therefor an allotment "on the *diminished reservation.*"[6] (Emphasis added). The phrase "diminished reservation" was interpreted to mean in *Rosebud* that the reservation was reduced geographically rather than in the sense urged by appellant here that there was a loss of tribal lands *within* the reservation. *Rosebud Sioux Tribe v. Kneip, supra,* 521 F.2d at

111–112. The court also found it significant in *Rosebud* that the land in question (Mellette County) was referred to in the Act as "the tract to be ceded." At 112. We think the Rosebud and Pine Ridge Acts of 1910 are so similar in language and time[7] that this court's decision in *Rosebud Sioux Tribe v. Kneip, supra,* is controlling in the instant case.

■ In *DeCoteau v. District County Court, supra,* the Supreme Court held that an 1891 act, wherein a sum certain was paid by the Government and placed in trust for the Sisseton-Wahpeton tribe, disestablished the Lake Traverse Sioux Reservation. Appellant contends that the method of payment provided for in the 1910 Act here in question, wherein a trust fund was established based upon *uncertain* future sales of ceded lands, distinguishes *DeCoteau* from this case and made the United States a mere trustee rather than a grantee of land sold to homesteaders in Bennett County. The Supreme Court has held in other cases where a similar method of payment was provided for, that reservation status was not terminated by opening Indian land to settlement. *Mattz v. Arnett,* 412 U.S. 481, 93 S.Ct. 2245, 37 L.Ed.2d 92 (1973); *Seymour v. Superintendent,* 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346 (1962); *Ash Sheep Co. v. United States,* 252 U.S. 159, 40 S.Ct. 241, 64 L.Ed. 507 (1920). However, as Judge Smith said in *Rosebud,* "[t]he determination of disestablishment . . . rests upon congressional intent, as to which the method of payment, whether lump-sum or otherwise, is but one of many factors to be considered."

5. The Rosebud Act uses the phrase "sell or dispose" whereas the Pine Ridge Act uses "sell *and* dispose." (Emphasis added). *See Rosebud Sioux Tribe v. Kneip, supra,* at 108. *See also DeCoteau v. District County Court,* 420 U.S. 425, 439–440 n. 22, 95 S.Ct. 1082, 45 L.Ed.2d 300 (1975).

A similar operative section using the phrase "to sell and dispose of" was found in the Act of June 1, 1910, 36 Stat. 455, which was considered by this court in *New Town v. United States,* 454 F.2d 121 (8th Cir. 1972). We held in *New Town* that the boundaries of the Fort Berthold Reservation, as established in 1891,

were not altered by the 1910 Act. However, subsequent provisos in that Act indicated a lack of any intent by Congress to disestablish the reservation status of the land in question. *See also United States ex rel. Condon v. Erickson,* 478 F.2d 684, 687 (8th Cir. 1973).

6. Rosebud Act of May 30, 1910, § 1, 36 Stat. 449; Pine Ridge Act of May 27, 1910, § 1, 36 Stat. 440.

7. Senator Gamble and Congressman Burke, both of South Dakota, introduced and guided the respective bills which became the Acts of 1910 through the Senate and House.

*Rosebud Sioux Tribe v. Kneip, supra,* 521 F.2d at 102. Thus, the method of payment in *DeCoteau* (sum certain) and in the instant case (sum uncertain) is not of conclusive effect. *Id. United States ex rel. Condon v. Erickson,* 478 F.2d 684, 687 (8th Cir. 1973). The record otherwise discloses no intent by Congress to preserve Bennett County within the original Pine Ridge Reservation and its boundaries.

The United States Government, as amicus curiae, suggests that the issue here was decided by this court in *Bennett County v. United States,* 394 F.2d 8, 9 (8th Cir. 1968), wherein we said: "The land in question [Bennett County] is wholly within the Pine Ridge Reservation." At issue there was whether Bennett County could construct, maintain and use certain roads lying within certain land within its confines without securing permission from the Secretary of the Interior or acquiring such rights by condemnation. This court held that pursuant to the Treaty of Fort Laramie in 1851, 11 Stat. 749; the Treaty of 1868, 15 Stat. 635; and the Act of March 2, 1889, 25 Stat. 888, Bennett County, South Dakota, was and continued to be "Indian Country" as that term is defined in 18 U.S.C. § 1151. Accordingly, Bennett County was enjoined from entering the land in question without permission of the Secretary or by lawful condemnation proceedings. Nowhere in the opinion, however, was the effect of the Act of May 27, 1910, considered. It is undisputed in the instant case that the Act of 1889 retained Bennett County within the confines of the Pine Ridge Indian Reservation. Thus, we find the quoted statement in *Bennett County v. United States, supra,* not to be controlling here.

█ We hold that Bennett County, South Dakota, was severed from the Pine Ridge Indian Reservation by the Act of May 27, 1910, and became part of the public domain and the State of South Dakota. Accordingly, South Dakota had jurisdiction to try petitioner Cook for criminal acts occurring on non-Indian land within Bennett County.[8]

Affirmed.

---

8. Appellant prior to oral argument moved to strike a portion of appellee's brief because it contains certain documents which were not a part of the original record before the district court. Such documents, consisting mostly of internal agency letters, were not considered by this court in reaching its decision. Thus, the motion is now moot.