**Bernard W. TOPASH, Relator,**

v.

**The COMMISSIONER OF REVENUE, Respondent.**

**No. 50030.**

Supreme Court of Minnesota.

March 28, 1980.

Bernard P. Becker, St. Paul, Richard B. Collins, Native American Rights Fund, Boulder, Colo., for relator.

Warren Spannaus, Atty. Gen., and Paul R. Kempainen, Sp. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

James W. Moorman, Asst. Atty. Gen., Edward J. Shawaker and Judith Welch Wegner, Attys., Dept. of Justice, Washington, D. C., amicus curiae.

WAHL, Justice.

A writ of certiorari was granted by this court to allow taxpayer Bernard Topash to challenge a decision of the Minnesota Tax Court denying his claim for refund of Minnesota income tax paid by him in 1973. The issue presented is whether the State of Minnesota has jurisdiction over income earned within the Red Lake Indian Reservation by an Indian residing within the reservation but enrolled in a tribe other than the Red Lake Band of Chippewa Indians. We reverse.

Bernard Topash is an enrolled member of the Tulalip Tribe of Indians in the State of Washington and was so during 1973. During 1973, he lived within the Red Lake Indian Reservation in Minnesota and was employed there by the U. S. Bureau of Indian Affairs. Minnesota income tax was withheld from his wages by his employer. He filed a 1973 state tax return and, after receiving a refund, paid a net income tax of $626.69 to the state for 1973. On May 5, 1977, as taxpayer-relator, he filed a claim for refund of these taxes paid. His claim for refund was denied by the Commissioner of Revenue in March 1978, whereupon he appealed to the Minnesota Tax Court, which affirmed the Commissioner's order. He seeks reversal of the Tax Court's decision, alleging that, as an Indian, he was exempt from state income taxation.

The issue raised is one we did not address in *Commissioner of Taxation v. Brun*, 286 Minn. 43, 174 N.W.2d 120 (1970), where we held that the State of Minnesota may not levy income taxes on wages earned on the Red Lake Indian Reservation by an enrolled member of the Red Lake Band of Chippewa residing on the Red Lake Reservation. The taxpayer contends that federal Indian jurisdiction, which preempts state taxing power within the Red Lake Reservation, includes Indians of all tribes and is not confined to Indians of the local tribe. Amicus Curiae, the Government of the United States, strongly supports this position. The state, in seeking to tax Mr. Topash, relies on the "inherent right" of the sovereign state to tax and argues that, although the Red Lake Band has jurisdiction over Mr. Topash for purposes of regulating his conduct, and although he would be subject to federal criminal law pertaining to Indians while on the reservation, the state can tax his income because he is not a member of the Red Lake Band.

The leading case on income tax immunity of Indians, *McClanahan v. Arizona State Tax Commission*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), held that a Navajo Indian, residing on the Navajo Reservation, was not subject to state income tax for money earned on the reservation. *McClanahan* does not directly answer the question raised by the instant case, because the court, though repeatedly stating that "reservation Indians" are exempt from tax, does not define "reservation Indian." The Commissioner argues that the term means only enrolled members of the tribe living on the reservation, as was the taxpayer in that case. It is more likely, however, that the court's use of the phrase "reservation Indian" was used to distinguish *McClanahan* from its companion case, *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973), decided the same day, wherein the court held that the state does have jurisdiction to tax activities carried on by Indians outside the boundaries of the reservation unless forbidden by federal law.

Specific language in *McClanahan* also supports the view that the Commissioner's interpretation is too narrow: "Since appellant is an Indian and since her income is derived wholly from reservation sources, her activity is totally within the sphere which the relevant treaty and statutes leave for the Federal Government and for the Indians themselves." 411 U.S. at 179–80, 93 S.Ct. at 1266.

The Supreme Court's conclusion that Arizona lacked jurisdiction to tax the income of an enrolled member of the Navajo tribe working on the Navajo reservation was based on principles of federal preemption against an historical "backdrop" of Indian sovereignty. The court examined applicable treaties and statutes defining the limits of state power, while remaining cognizant of the deeply-rooted policy of leaving Indians free from state interference. Broadly speaking, the *McClanahan* case stands for the proposition that absent cessation of jurisdiction or other federal statutes permitting it, a state may not tax Indian reservation lands or Indian income from activities carried on within the boundaries of the reservation. *Mescalero Apache Tribe v. Jones*, 411 U.S. at 148, 93 S.Ct. at 1270.

■ Statutes and treaties applicable to the instant case do not expressly discuss the status of tribal Indians residing on reservations other than their own. The U. S. treaties of 1863 and 1864 with the Red Lake Chippewa contain no language granting or denying jurisdiction to the state to tax

members or nonmembers of the Red Lake Band.[1] Nor are there any provisions in Minnesota's enabling legislation, Minn.Stat. §§ 290.03, 290.17 (1978), addressing the issue of the state's power to tax Indians of any tribe. Therefore, although the Commissioner is correct that no statutory authority can be found which expressly denies Minnesota jurisdiction to tax an Indian who does not belong to the Red Lake band, neither is there authority which confers that jurisdiction on Minnesota. While normally a state has inherent power to tax all subjects over which its sovereign power extends, *International Harvester Co. v. Wisconsin Dept. of Taxation*, 322 U.S. 435, 445, 64 S.Ct. 1060, 1065, 88 L.Ed. 1373 (1944), "Indians stand in a special relation to the federal government from which the states are excluded unless the Congress has manifested a clear purpose to terminate [a tax] immunity and allow states to treat Indians as part of the general community." *Bryan v. Itasca County*, 426 U.S. 373, 392, 96 S.Ct. 2102, 2113, 48 L.Ed.2d 710 (1976), *quoting Oklahoma Tax Commission v. United States*, 319 U.S. 598, 613–14, 63 S.Ct. 1284, 1291, 87 L.Ed. 1612 (Murphy, J., dissenting).[2]

■ Federal statutes and regulations in general do not expressly distinguish between Indians belonging to different tribes.[3] "Indian" is defined throughout the code and regulations as a person of Indian descent who is a member of "an," or "any," recognized Indian tribe.[4] In 25 U.S.C. § 479

1. *See* Treaty with the Chippewa-Red Lake and Pembina Bands, 1863, 13 Stat. 667; Treaty with the Chippewa-Red Lake and Pembina Bands, 1864, 13 Stat. 689. For a well-documented discussion supporting the thesis that most Indian treaties contain no provision providing that Indians may not be taxed because such a provision was unnecessary in view of the historical rule that all Indian lands and income are tax exempt, see J. V. White, *Taxing Those They Found Here* (1972).

2. The Supreme Court's previous test for determining the validity of state action was whether the action infringed on the right of reservation Indians to self-government. *Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 270, 3 L.Ed.2d 251 (1959). *McClanahan v. Arizona State Tax Commission*, 411 U.S. 164, 93 S.Ct. 1257, 36

L.Ed.2d 129 (1973) expressly limited the proper application of this test to situations involving non-Indians, and therefore, to the extent this test was relied on by the Tax Court below, the court was in error. 411 U.S. at 179–80, 93 S.Ct. at 1266.

3. Congress differentiates between tribes when making per capita payments to members of specific tribes, *see* 25 U.S.C. §§ 681–690 (1976), but these provisions, cited by the Commissioner, are not relevant to the question facing this court.

4. *See, e. g.,* 25 U.S.C. § 479 (1976), 25 U.S.C. § 450b (1976), 25 C.F.R. §§ 11.2(c), 20.1(p) (1979), 42 C.F.R. § 36.12(a) (1979). Courts have held that enrollment in a tribe is not

(1976), "tribe" is defined as "any Indian tribe, organized band, pueblo, *or the Indians residing on one reservation.*" (Emphasis supplied.) The statutes relied on by the court in *McClanahan*, Pub.L. 280 [5] and the Buck Act,[6] refer to "Indians" without distinguishing between tribes. The broad general policy is to protect Indians, of whatever tribe, from state government interference. *See United States v. Kagama*, 118 U.S. 375, 384, 6 S.Ct. 1109, 1114, 30 L.Ed. 228 (1886); *Cook v. State*, 88 S.D. 102, 215 N.W.2d 832 (1974). Although these statutory provisions do not unambiguously answer the question raised by the instant case, we have recognized that statutes passed for the

determinative of status as an "Indian." *See, e. g., United States v. Dodge*, 538 F.2d 770, 786 (8th Cir. 1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 547 (1977); *United States v. Ives*, 504 F.2d 935, 953 (9th Cir. 1974), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977).

5.  Act of Aug. 15, 1953, Pub.L. 83–280, 67 Stat. 588, codified at 18 U.S.C. § 1162, and 28 U.S.C. § 1360, granted jurisdictional authority to certain states, including Minnesota. A method whereby other states could assume jurisdiction over Indian reservations is provided by the Indian Civil Rights Act, 25 U.S.C. §§ 1321–26 (1976). Section 1360 of Title 28 provides as follows:

    (a) Each of the States or Territories listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over other civil causes of action, and those civil laws of such State or Territory that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:

| State or Territory of | Indian country affected |
| --- | --- |
| Alaska | All Indian country within the Territory. |
| California | All Indian country within the State. |
| Minnesota | All Indian country within the State, except the Red Lake Reservation. |
| Nebraska | All Indian country within the State. |
| Oregon | All Indian country within the State, except the Warm Springs Reservation. |
| Wisconsin | All Indian country within the State. |

    (b) Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any

benefit of Indians, like Indian treaties, must be liberally construed, doubtful expressions being resolved in favor of the Indians. *Bryan v. Itasca County*, 426 U.S. at 392, 96 S.Ct. at 2112. Considering this principle and the related requirement from *Bryan* that congressional intent to terminate Indian tax immunities must be clear, there is little basis for Minnesota's assertion of jurisdiction over taxpayer here.

Furthermore, the Red Lake Reservation is expressly excepted from those Indian areas over which Minnesota has civil and criminal jurisdiction by 28 U.S.C. § 1360 (1976) and 18 U.S.C. § 1162 (1976).[7] The

Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto; or shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of such property or any interest therein.

    (c) Any tribal ordinance or custom heretofore or hereafter adopted by an Indian tribe, band, or community in the exercise of any authority which it may possess shall, if not inconsistent with any applicable civil law of the State, be given full force and effect in the determination of civil causes of action pursuant to this section.

Section 1162 of Title 18 of the U. S. Code grants state jurisdiction over criminal offenses committed by or against Indians in Indian country. The language of the section is parallel to that of 28 U.S.C. § 1360, and thus the Red Lake Reservation is not subject to state criminal jurisdiction pursuant to the statute. The U. S. Supreme Court held in *Bryan v. Itasca County*, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976), that 28 U.S.C. § 1360 is *not* a congressional grant of power to the states to tax reservation Indians not expressly excluded by the statute's terms.

6.  The Buck Act, 4 U.S.C. §§ 105–110 (1976), which generally grants authority to states to tax residents of federal areas, expressly provides in § 109 that nothing in the act shall be deemed to authorize the collection of any tax on "any Indian not otherwise taxed."

7.  It is unclear, however, whether Minnesota lacks jurisdiction over nonmembers of the Red Lake Band of Chippewa. Article VI, § 5 of the

fact that Arizona did not have jurisdiction over the Navajo reservation was important to the holding in *McClanahan*, 411 U.S. at 178–79, 93 S.Ct. at 1265–1266.

Other courts, considering whether tax exemptions apply to Indians living on reservations other than their own, have held that membership in a particular tribe is not important. *Fox v. Bureau of Revenue*, 87 N.M. 261, 531 P.2d 1234 (N.M.App.1975), *state cert. denied*, 88 N.M. 318, 540 P.2d 248 (1975), *U.S. cert. denied*, 424 U.S. 933, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976), held that a Commanche Indian residing on the Navajo Reservation was not subject to state income tax for earnings as an employee of the BIA. The Montana Supreme Court came to the same conclusion about the income of nonmember Indians living on the Fort Peck Indian Reservation in *LaRoque v. Montana*, 583 P.2d 1059, 1063–65 (Mont. 1978). *See also Dillon v. Montana*, 451 F.Supp. 168 (D.Mont.1978) (state has no jurisdiction to impose income tax on nonmember Indians living on Crow Reservation, where Crow treaty creates reservation for Crows and other Indians whom they choose to admit onto reservation). In *Confederated Salish and Kootenai Tribes v. Moe*, 392 F.Supp. 1297, 1312 (D.Mont.1974), *aff'd on other grounds*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), the court held that the state had no jurisdiction to impose taxes on residents of the Flathead Reservation, whether they are members of the tribe or not. This ruling, not challenged on appeal, was left undisturbed by the Supreme Court. 425 U.S. at 480 n. 16, 96 S.Ct. at 1645 n. 16. The Supreme Court affirmed the lower court's rulings that a state's personal property tax on property located within the reservation, a vendor license fee applied to an Indian conducting a cigarette business for the tribe on reservation land, and a cigarette sales tax applied to on-reservation sales by Indians to Indians, were impermissible.

Constitution of the Red Lake Band, which asserts general tribal jurisdiction over members of the band and Indians from other tribes, considered in conjunction with the fact that the Red Lake Indians retain an unusually well-protected right to self-government and sovereignty, *Commissioner of Taxation v. Brun*, 286

Our analysis of the U. S. Supreme Court cases and relevant federal statutes and regulations persuades us that the position of Mr. Topash and the U. S. Department of the Interior is a sound one. We hold, therefore, that federal Indian jurisdiction includes Indians of all tribes and thus preempts state taxing power within the Red Lake Reservation with regard to an enrolled member of another tribe. We do not decide the question with regard to nonenrolled Indians.

The decision of the Tax Court is reversed.

Minn. 43, 174 N.W.2d 120 (1970), leads to the conclusion that the state probably has no jurisdiction over nonmember Indians living on the Red Lake Reservation. If this is so, then the state would have no means to impose or collect an income tax on a nonmember Indian.