**UNITED STATES of America, Appellee,**

v.

**Neil D. STANDISH, Appellant.**

No. 92–3675.

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1993.

Decided Sept. 7, 1993.

**1208**

Lynn M. Boughey, Minot, ND, argued for appellant.

Cameron W. Hayden, Asst. U.S. Atty., Bismarck, ND, argued (Stephen D. Easton, U.S. Atty., on brief), for appellee.

Charles A. Hobbs, Washington, DC, argued for amicus curiae, the Three Affiliated Tribes of the Fort Berthold Reservation.

Before RICHARD S. ARNOLD, Chief Judge, LAY, Senior Circuit Judge, and FAGG, Circuit Judge.

FAGG, Circuit Judge.

A jury convicted Neil D. Standish of second-degree murder, arson, and as an accessory after the fact in connection with the brutal murder of Leonard Yellow Face outside Yellow Face's home in New Town, North Dakota. *See* 18 U.S.C. §§ 1153, 1111, 81, 2, 3 (1988). Standish challenges the district court's jurisdiction, and alternatively, he contends the district court committed error in examining the prospective jurors, in ruling on the admissibility of certain evidence, and in failing properly to instruct the jury. We affirm.

The federal courts have jurisdiction over major crimes committed by an Indian within Indian country. *See* 18 U.S.C. § 1153 (1988). Although Standish is an enrolled member of the Three Affiliated Tribes of the Fort Berthold Reservation, he contends the district court lacked jurisdiction under § 1153 because New Town is not within Indian country. *See* 18 U.S.C. § 1151(a) (1988) (defining Indian country to include "land within the limits of any Indian reservation"). Standish contends that since 1910, when Congress enacted a surplus land act that opened the part of the Fort Berthold Reservation where New Town is located to homesteading by non-Indians, the opened areas are no longer part of the reservation.

Our holding in *City of New Town v. United States*, 454 F.2d 121 (8th Cir.1972), forecloses Standish's contention. In *New Town*, we concluded Congress did not reduce the size of the Fort Berthold Reservation when it

opened the reservation to homesteading by non-Indians. *Id.* at 127; *see* Act of June 1, 1910, Pub.L. No. 61–197, 36 Stat. 455 (Fort Berthold Act). Although this panel lacks authority to overrule the *New Town* panel's decision, *see Campbell v. Purkett*, 957 F.2d 535, 536 (8th Cir.1992), Standish contends *New Town* is no longer controlling because a later United States Supreme Court decision established a new legal analysis that we must apply to decide whether the Fort Berthold Act diminished the reservation. *See Solem v. Bartlett*, 465 U.S. 463, 104 S.Ct. 1161, 79 L.Ed.2d 443 (1984) (relating to Cheyenne River Sioux Reservation), *aff'g* 691 F.2d 420 (8th Cir.1982) (en banc). We disagree.

Rather than announce a new legal analysis, *Solem* recognized the Supreme Court's "precedents in the area have established a fairly clean analytical structure for distinguishing those surplus land [a]cts that diminished reservations from those [a]cts that simply offered non-Indians the opportunity to purchase land within established reservation boundaries." *Solem*, 465 U.S. at 470, 104 S.Ct. at 1166; *see id.* at 470–72, 104 S.Ct. at 1166–67 (discussing analytical structure). We followed this analytical structure in *New Town* to decide Congress did not intend the Fort Berthold Act to diminish the size of the Fort Berthold Reservation. *See New Town*, 454 F.2d at 125–27.

Standish's contention that the *New Town* court failed to consider the historical background of the Fort Berthold Act is without merit. Also, Standish incorrectly relies on the legislative history of other contemporaneously enacted surplus land acts relating to the Pine Ridge and Rosebud Reservations. Only the language of a particular surplus land act and the circumstances surrounding its passage control the decision whether the act diminished the Indian reservation. *Solem*, 465 U.S. at 469, 104 S.Ct. at 1165. Although we held Congress intended to diminish the Pine Ridge and Rosebud Reservations by opening parts of those reservations to homesteading, we distinguished the acts relating to those reservations from the Fort Berthold Act, in which we found Congress had no intention to diminish the Fort Berthold Reservation. *See United States ex rel.*

*Cook v. Parkinson*, 525 F.2d 120, 123 n. 5 (8th Cir.1975), *cert. denied*, 430 U.S. 982, 97 S.Ct. 1677, 52 L.Ed.2d 376 (1977). (Pine Ridge Reservation); *Rosebud Sioux Tribe v. Kneip*, 521 F.2d 87, 90 n. 7 (8th Cir.1975), *aff'd*, 430 U.S. 584, 97 S.Ct. 1361, 51 L.Ed.2d 660 (1977) (Rosebud Reservation).

We are satisfied *New Town* properly identified and applied the legal principles later summarized in *Solem*. Thus, we conclude *Solem* does not require re-examination of *New Town*. Because New Town's location within the Fort Berthold Reservation's boundaries confers federal jurisdiction under § 1153 as a matter of law, the district court properly denied Standish's request for an evidentiary hearing on the jurisdiction issue. Having found federal jurisdiction under § 1153, we need not review the district court's ruling that jurisdiction exists under the dependent Indian community doctrine. *See* 18 U.S.C. § 1151(b) (1988) (defining Indian country to include "dependent Indian communities").

■ We now turn to Standish's arguments based on asserted trial-related errors committed by the district court. Although Standish concedes pretrial publicity was not sufficient to demand a change of venue, Standish contends his trial was unfair because the district court questioned the prospective jurors about pretrial publicity. Even if Standish had objected to the dialogue between the district court and the prospective jurors, we are satisfied the district court appropriately addressed Standish's concern about the pretrial publicity and excused the only prospective juror who believed the publicity showed Standish was guilty.

■ Relying on Federal Rules of Evidence 401 and 403, Standish contends the district court improperly admitted a videotape of the murder scene and autopsy photographs of the victim's body. We disagree. The videotape was admissible to show how the crimes were committed and the photographs of the victim's wounds tended to link Standish to the murder. Despite the graphic nature of the exhibits, the district court did not abuse its discretion when it admitted the videotape and photographs. *United States v. Petary*, 857 F.2d 458, 463 (8th Cir.1988). Standish also complains because the district

court asked the prosecutor whether Standish's audiotaped interview was a confession in the course of considering Standish's challenge to the tape's admissibility. We fail to see how a question the district court asked to decide the admissibility of the tape prejudiced Standish. *See United States v. Harris,* 488 F.2d 867, 869 (8th Cir.1973). The tape was never characterized as a confession in the dialogue between the district court and counsel, and the district court sustained Standish's objection to playing the tape for the jury.

Finally, Standish contends the district court erroneously refused his request to instruct the jury on assault as a lesser included offense of murder. We cannot agree. Because murder can occur without an assault, the district court correctly determined the elements of assault are not a subset of the elements of murder. *See Schmuck v. United States,* 489 U.S. 705, 716, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989) (adopting elements test for lesser included offenses); 18 U.S.C. § 1111(a) (1988) (elements of murder); 18 U.S.C. § 1153(b) (1988); N.D.Cent. Code § 12.1–17–01 (Supp.1993) (elements of simple assault). Thus, the district court properly rejected Standish's request for a lesser offense instruction.

Accordingly, we affirm.