# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3671

_____

United States of America

*Plaintiff - Appellee*

v.

Chad Everett Bear, Sr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: October 19, 2016
Filed: December 28, 2016

_____

Before RILEY, Chief Judge, WOLLMAN and BENTON, Circuit Judges.

_____

RILEY, Chief Judge.

Chad Bear, Sr., sexually abused a young child in and around New Town, North Dakota. He argues he should not have been tried and convicted in federal court because New Town is not "Indian country." See 18 U.S.C. § 1153(a) (establishing federal criminal jurisdiction over "[a]ny Indian who commits [certain crimes] within the Indian country"); id. § 1151(a) (defining "Indian country" to include "all land

within the limits of any Indian reservation under the jurisdiction of the United States Government").[1]  Bear's theory is that the land New Town sits on was carved out of the Fort Berthold Reservation, and thus came under the primary jurisdiction of the state of North Dakota when Congress opened it to homesteading in 1910.  See Act of June 1, 1910, ch. 264, 36 Stat. 455, 455 ("authoriz[ing] and direct[ing]" the Secretary of the Interior "to sell and dispose of" certain reservation land); see also Act of Mar. 3, 1891, ch. 543, § 23, 26 Stat. 989, 1032-35 (setting the reservation's original boundaries).  Bear is not the first to take this position.

Almost forty-five years ago, in City of New Town v. United States, we rejected an essentially identical argument and determined "the boundaries of the Fort Berthold Reservation are those specified in the Act of March 3, 1891"—encompassing New Town—"and . . . the Act of June 1, 1910, and subsequent Acts did not alter those boundaries."  City of New Town v. United States, 454 F.2d 121, 127 (8th Cir. 1972) (citation omitted).  Bear insists we must reconsider the issue because a later decision from the Supreme Court, South Dakota v. Yankton Sioux Tribe, 522 U.S. 329 (1998), undermined our reasoning.  See, e.g., Patterson v. Tenet Healthcare, Inc., 113 F.3d 832, 838 (8th Cir. 1997) ("Although one panel of this court ordinarily cannot overrule another panel, this rule does not apply when the earlier panel decision is cast into doubt by a decision of the Supreme Court.").  According to Bear, New Town rested exclusively on a "saving clause" in the 1910 statute and Yankton Sioux rejected such an analysis, so the entire holding of New Town collapses.  He misreads both cases.

---

[1]Bear does not dispute he is an "Indian" for purposes of § 1153(a).  And the crimes he was convicted of, namely aggravated sexual abuse of a child younger than twelve, see 18 U.S.C. § 2241(c), and abusive sexual contact with a child younger than twelve, see id. § 2244(a)(5), are covered by the statute because they are "felon[ies] under chapter 109A [of Title 18 of the U.S. Code]."  Id. § 1153(a).

First, though we did treat the saving clause[2] as significant in New Town, we also considered other parts of the statute, as well as its historical context, and did not give the saving provision controlling weight. See New Town, 454 F.2d at 125-26. And Yankton Sioux nowhere "flatly rejected this Court's analysis regarding the saving clause . . . now at issue," as Bear claims. Yankton Sioux reversed a decision of this court that cited New Town for the unremarkable point that a saving clause "should be given due weight" in determining the effect of a statute opening part of a different reservation. Yankton Sioux Tribe v. S. Mo. Waste Mgmt. Dist., 99 F.3d 1439, 1448 (8th Cir. 1996). The Supreme Court did not question that general proposition, just how the panel applied it. See Yankton Sioux, 522 U.S. at 345-49. In the Supreme Court's view, because the statute's operative provisions created "a 'nearly conclusive,' or 'almost insurmountable,' presumption of diminishment," the saving clause did not justify "eviscerat[ing]" the rest of the law. Id. at 344, 346 (first quoting Hagen v. Utah, 510 U.S. 399, 411 (1994); and then quoting Solem v. Bartlett, 465 U.S. 463, 470 (1984)). There is no suggestion in the Court's context-specific holding that saving clauses can never be considered in deciding such issues, nor that they might not help tip the balance the other way when the rest of the statute is more equivocal.[3]

---

[2]The relevant language was: "nothing in this Act shall be construed to deprive said Indians of Fort Berthold Indian Reservation of any benefits to which they are entitled under existing treaties or agreement not inconsistent with the provisions of this Act." Act of June 1, 1910, § 14, 36 Stat. at 459.

[3]The key language in the statute at issue in Yankton Sioux was: "'The Yankton tribe of Dakota or Sioux Indians hereby cede, sell, relinquish, and convey to the United States all their claim, right, title, and interest in and to [the land].'" Yankton Sioux, 522 U.S. at 337 n.1 (quoting Act of Aug. 15, 1894, ch. 290, § 12, 28 Stat. 286, 314). By contrast, the analogous provision here is: "That the Secretary of the Interior be, and he is hereby, authorized and directed . . . to sell and dispose of, as hereinafter provided, all the [land]." Act of June 1, 1910, 36 Stat. at 455. It is well established that while some such surplus land acts "'freed . . . land of its reservation status and thereby diminished the reservation boundaries,'" others "'simply offered non-Indians

Anyway, as the government points out, even if the Court's discounting of the saving clause in Yankton Sioux could be understood to cast a shadow on New Town's reasoning, we reached the same conclusion in Duncan Energy Co. v. Three Affiliated Tribes of the Fort Berthold Reservation without ever mentioning the saving clause. See Duncan Energy Co. v. Three Affiliated Tribes of the Fort Berthold Reservation, 27 F.3d 1294, 1296-97 (8th Cir. 1994) (addressing challenges on the merits and concluding New Town was rightly decided). So regardless of whether New Town is still good law after Yankton Sioux, Duncan Energy unquestionably is.[4]

In short, our law is clear: New Town was just as much part of the Fort Berthold Reservation when Bear committed his crimes as it was in 1891. Bear was therefore properly subject to federal prosecution and the district court[5] was right to keep Bear's case. See 18 U.S.C. § 3231 (federal criminal jurisdiction). We affirm Bear's convictions and sentence. See 28 U.S.C. § 1291 (appellate jurisdiction).

———————————————————

———————————————

the opportunity to purchase land within established reservation boundaries.'" Yankton Sioux, 522 U.S. at 343 (quoting Solem, 465 U.S. at 467, 470).

[4]Duncan Energy also forecloses Bear's suggestion that New Town's precedential value was already "eviscerated" by the Supreme Court's decision in Rosebud Sioux Tribe v. Kniep, 430 U.S. 584 (1977), long before Yankton Sioux. We specifically addressed that possibility and decided Rosebud Sioux, which dealt with another surplus land act, was "not . . . instructive" on the interpretation of this particular statute. Duncan Energy, 27 F.3d at 1297; see also United States v. Standish, 3 F.3d 1207, 1209 (8th Cir. 1993) (rejecting an argument that "New Town is no longer controlling," sixteen years after Rosebud Sioux).

[5]The Honorable Daniel L. Hovland became Chief Judge of the United States District Court for the District of North Dakota on November 1, 2016. The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota, tried Bear's case and adopted Chief Judge Hovland's earlier ruling.

-4-